Cadwallader *v.* New Amsterdam Casualty
Company, Appellant.

Argued May 4, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Ralph S. Croskey,* with him *Norman R. Bradley,* for appellant.

*Robert K. Greenfield,* with him *Frederick Blumberg,* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellee.

OPINION BY MR. JUSTICE McBRIDE, June 30, 1959:

The plaintiff, T. Sidney Cadwallader, a lawyer, and David A. Clarke, a partner or associate, were both "additional insureds" on a lawyer's protective policy. Under that policy defendant insurance company agreed (1) to pay whatever plaintiff might become obligated to pay resulting from any "claim" made against him arising out of the performance of professional services as a lawyer and caused by any negligent act, error or omission for which he would be legally liable;[1] (2) to

---

[1] The coverage provisions reads as follows: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages resulting from any claim made against the insured arising out of the performance of professional services for others in the insured's capacity as a lawyer and caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable."

defend on his behalf any suit brought against him alleging such negligent act or omission and seeking damages on account thereof;[2] (3) to pay all premiums on bonds required to be filed in connection therewith.[3] It was specifically provided that the policy would not apply to intentional misconduct.[4]

The pleadings consisted of a complaint and answer. At trial there was both documentary and oral testimony, at the end of which the trial judge gave binding instructions for the plaintiff. Defendant did not move for a new trial but, having presented a point for binding directions in its favor, did move for judgment n.o.v., which was refused and judgment for plaintiff was entered on the verdict.

It would appear that four corporations owned some 80 acres of land in Bucks County upon which was erected a sand and gravel plant. A portion of that land was condemned at the instance of the Highway Depart-

---

[2] The defense provision is as follows: "(a) defend in his name and behalf any suit against the insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the company. The company, however, shall not make settlement or compromise any claim or suit without the written consent of the insured;"

[3] "(b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;"

[4] The exact language is as follows: "THIS POLICY DOES NOT APPLY: (a) to any dishonest, fraudulent, criminal or malicious act or omission of the insured, any partner or employee; . . ."

ment of Pennsylvania. At that time Harry D. Mencher, a New York lawyer, had represented these four corporations. His Pennsylvania correspondent was Rodney T. Bonsall of Philadelphia. Cadwallader represented two persons who were mortgagees of the property, and in order to protect the interests of his clients in the condemnation award, requested that the appearances of Mencher and Bonsall, as attorneys for the owner corporations, be withdrawn and that he be permitted to act for all the parties interested in the proceedings. Mencher and Bonsall, having done work in the matter, indicated, in writing, their willingness to withdraw their appearances if Cadwallader would see to it that professional fees claimed by them, particularly from two of the real estate corporations, would be retained by him and not forwarded to the clients unless specifically released by them. Cadwallader, in writing, specifically agreed to withhold the sum of $34,486.17 ($30,-000 of which was for Mencher and the balance for Bonsall) from the condemnation moneys which it was expected would pass through his hands until such fee claim had been satisfactorily adjusted. In consideration of this undertaking Mencher and Bonsall withdrew their appearances.

Bonsall filed no complaint. Mencher commenced suit in the United States Court for the Eastern District of Pennsylvania, setting up the agreement recited above and averring that the condemnation proceeding resulted in an award of not less than $200,000 which was paid over to Cadwallader but that Cadwallader, *in violation of his agreement,* paid out to the various clients represented by him, exclusive of his own fee, the full sum but did not retain, as he had agreed to do, the funds with which to pay Mencher. Having averred this failure Mencher went on to allege that there was an unlawful conspiracy and collusive arrangement between

Cadwallader and his clients that they would maliciously circumvent the intent, design and effect of the escrow promise.

Upon receipt of a copy of this complaint, Cadwallader transmitted it to the insurance company and called upon it to defend him. Shortly thereafter the insurance company exercised its right under the policy to investigate the situation and sent an interviewer to see Cadwallader who furnished him with a detailed statement showing that the money was mistakenly and negligently forwarded to the clients in violation of the agreement. The insurance company then refused to defend Cadwallader and he was compelled to retain counsel to defend him in the federal court action. Thereafter, the federal court action was settled by the payment of $2,500 to Mencher. In addition, Cadwallader paid his counsel $2,500 for defending him and expended the sum of $50 for a bond in that litigation. The accuracy and fairness of these payments is not in dispute. Cadwallader then brought suit against the insurance company for the $5,050 which he had paid.

At the trial he offered in evidence the record admissions and in addition personally testified that although he had entered into the agreement not to disburse the funds received from the condemnation proceeding until notified by Mencher, that the claims for fees had been suitably settled, the money had been inadvertently or carelessly paid out by his associate, Clarke, in the absence of Cadwallader from the office, because Clarke did not review the file and was not, at the time of payment, conscious of the agreement made by Cadwallader. He testified, as noted above, that this fact had been communicated to the insurance company prior to its decision not to defend him. In addition, Clarke testified in corroboration of Cadwallader. The insurance company introduced no evidence. This oral

testimony therefore stands unrebutted. The trial judge directed a verdict in favor of the plaintiff.

It must be conceded at once that if the binding direction for plaintiff necessarily depends upon the oral testimony in the case, even though uncontradicted, it cannot be sustained. *Nanty-Glo Boro v. American Surety Company*, 309 Pa. 236, 163 Atl. 523; *Satterwhite v. National Powder Company*, 362 Pa. 133, 66 A. 2d 278. It remains therefore to inquire whether the documentary evidence justified the action of the trial judge. In this connection, although the policy of insurance was not attached to the complaint, it was introduced in evidence and presents for our interpretation a purely legal question.

It is of course clear that if there be any ambiguity in the contract of insurance it must be resolved in favor of the insured since it was the insurer who wrote the contract. *Armon v. Aetna Casualty & Surety Company*, 369 Pa. 465, 87 A. 2d 302; *Sack v. Glens Falls Insurance Company*, 356 Pa. 487, 52 A. 2d 173. The insurance company, according to the terms of the protective policy, had a duty to defend "claims made against the insured arising out of the performance of professional services for others . . . as a lawyer and caused by any negligent act, error or omission of the insured . . ." It cannot seriously be contended that the breach did not arise out of the "performance of professional services". In paragraphs 1 to 16 of his complaint Mencher alleged that Cadwallader failed to retain control of the funds which came into his hands in his professional capacity as a lawyer representing clients and which he had agreed to hold in his own possession to assure performance by Mencher's clients of certain commitments. Cadwallader's undertaking of April 21, 1955 to retain the funds was set forth in paragraph 13 of the Mencher complaint. In paragraph 15, the omission to retain was

recited as follows: "FIFTEENTH: No part of the afore-
said sum of not less than $200,000 was retained in fact
by the said defendant, T. SIDNEY CADWALLADER, for the
plaintiff as was agreed as aforesaid but was on the con-
trary paid over by him in full, less his own fee of $18,-
000, to and for the benefit of all the parties interested
therein, except the plaintiff, *in violation of the said
writing and committment aforesaid;* and of which
amount the sum of $50,000 was delivered by him to
said HAROLD KARP for redelivery to the BIRNBAUMS;
and which said $50,000 was received by the BIRNBAUMS
on or about September 23, 1955; and the BIRNBAUMS
have not paid nor indicated any willingness to pay the
plaintiff the amount of his said claim although again
duly demanded after September 23, 1955." (Emphasis
supplied.) Had Mencher's complaint not gone on to al-
lege an unlawful conspiracy and collusive arrangement
it would have set forth a complete cause of action
against Cadwallader.[5] The cause of action which would
have been so stated (in the first 16 paragraphs of Men-
cher's complaint) would be one which may or may not
have come within the coverage of Cadwallader's insur-

---

[5] Under the Federal Rules of Civil Procedure the elements of
tort, fraud and deceit can be set forth in the same complaint and
even in the same paragraph. Rule 8(e)(2) provides: "A party
may set forth two or more statements of a claim or defense
alternately or hypothetically, either in one count or defense or in
separate counts or defenses. When two or more statements are
made in the alternative and one of them if made independently
would be sufficient, the pleading is not made insufficient by the
insufficiency of one or more of the alternative statements. A
party may also state as many separate claims or defenses as he
has regardless of consistency and whether based on legal or on
equitable grounds or on both. All statements shall be made sub-
ject to the obligations set forth in Rule 11." (Rule 11 relates
only to provisions governing signing of pleadings.) See also
*Keiser v. Walsh*, 118 F. 2d 13 (1941).

ance policy with the defendant. It would be within the coverage of the policy if the violation of this agreement was due to a negligent act, error or omission. If, however, the violation was due to a dishonest, fraudulent, criminal or malicious act or omission it would not be covered.

It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril. See *University Club v. American Mutual Liability Insurance Company*, 124 Pa. Superior Ct. 480, 189 Atl. 534. In the leading case of *Lee v. Aetna Casualty & Surety Company*, 178 F. 2d 750 (C.A. 2, 1949) an insured brought suit on a policy of liability insurance. The complaint was in two counts, the first seeking relief for a judgment which plaintiff was forced to pay to an injured party and the second seeking his costs in defending that suit. The United States Court of Appeals for the Second Circuit, speaking through Judge LEARNED HAND, held that the insurer was not obligated to pay the amount of the judgment recovered against the insured as the recovery was not one within the coverage of the policy. However, the Court went on to grant the insured his costs of defending that suit. The insurance policy in that case, as in this one, required the insurance company to defend only those claims covered by the policy. The court said, that so long as the complaint filed by the injured party covered an injury which "might or might not" fall within the coverage of the policy the insurance company was obliged to defend. In the course of the opinion they said: ". . . the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one

can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. When, however, *as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it.*

. . .

"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover. . . ." (Emphasis supplied.)

Defendant has cited the case of *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A. 2d 304. In that case this Court held that the insurance company was justified in not defending an action brought against the insured taproom owner by a patron for personal injuries because the taproom owner had attached the pleading filed by the patron against him as part of his complaint against the company. The patron had unequivocally alleged assault and battery at the instigation of the insured in the original complaint, an offense clearly excluded under the terms of the policy. The majority held that the complaint against the insurance company, incorporating by reference, as it did, the patron's complaint, revealed that the cause of action was based upon facts which did not come within the scope of the policy. We said, that under no theory of law could the insured prevail against the insurance company because it would not be possible for the injured patron to recover on a claim of negligence when the suit was founded on the theory of intentional tort. Just as the pleading in that

case fixed the insurer's right, since neither amendment nor variance in proof could possibly establish a cause of action which would be cognizable under the insurance contract, so does Mencher's pleading fix the insured's right in this case. In the *Wilson* case, *supra*, the complaint of the injured party alleged *only* an injury which clearly was not within the coverage of the insurance policy. In this case, the complaint filed by Mencher contained two separate causes of action, one for simple breach of the undertaking and the other for conspiracy. If the one for the breach of the undertaking is due to a negligent act or omission this would constitute a claim within the scope of the policy and, as Judge HAND said in *Lee v. Aetna Cas. Co., supra*, ". . . It was the duty of the defendant to undertake the defense until it could confine the claim to a recovery that the policy did not cover."

The second reason given by the able opinion of the trial court for granting binding directions, i.e. that a claim based on negligence would be ultimately sustained under the complaint, despite the allegations of conspiracy and fraud because of the liberality of pleading under the Federal Rules of Civil Procedure[6] also has merit. However, under our interpretation of the insurance contract and the complaint filed by Mencher, it is unnecessary to consider whether this liberality of amendment under the Federal Rules would distinguish this case from that of *Wilson v. Maryland Cas. Co., supra.*

We do not believe that the parties would have agreed, prior to entering this contract, that the promise to defend did not include all occasions in which the insurer might eventually become liable to pay. Were we to hold otherwise "insurance" would cease to mean

---

[6] See footnote 5, *supra.*

what it ought to mean. We hold, therefore, that the Trial Judge, independent of the oral testimony, was justified in giving binding instructions for the plaintiff as the complaint which Cadwallader filed and the documentary evidence was sufficient on its face. Neither the documentary evidence nor the oral testimony was sufficient to relieve the insurer of its affirmative duty of production of evidence to show that the prima facie proof of coverage was rebutted by the exclusion.

The judgment is affirmed.