Albert Frederick BRUNNER

v.

William A. McCULLOUGH, Jr.

v.

AMERICAN MOTORISTS INSURANCE COMPANY and American Hardware Mutual Insurance Company.

Civ. A. No. 26349.

United States District Court
E. D. Pennsylvania.

April 24, 1963.

Walter B. Gibbons, by William J. Toy, Philadelphia, Pa., for third party-plaintiff.

Swartz, Campbell & Henry, by Lynn L. Detweiler, Philadelphia, Pa., for American Motorists Ins. Co.

Albert C. Gekoski, Philadelphia, Pa., for American Hardware Mut. Ins. Co.

WOOD, District Judge.

The only unresolved question in this motor vehicle case is the extent, if any, of the third-party defendants' insurance coverage of the defendant, William A. McCullough, Jr. The plaintiff's action has been settled, and the defendant voluntarily dismissed his counterclaim. Only the third-party action of William A. McCullough, Jr., hereinafter referred to as "McCullough," and the cross-claim between the insurance companies are at issue.

All of the parties have waived a jury trial and extensive findings of fact and conclusions of law.

When this accident occurred, McCullough was President of Transmissions & Conveyors, Inc., which was then on the verge of bankruptcy, and at the same time he was employed as a salesman by Rodney Davis Gear Company. Both of these companies were original defendants but were subsequently dismissed because of lack of diversity of citizenship, leaving McCullough as the sole defendant.

Rodney Davis Gear Company, hereinafter referred to as "Davis," was insured by American Motorists Insurance Company and Transmissions & Conveyors, Inc., hereinafter referred to as "T. & C.," was insured by the American Hardware Mutual Insurance Company. When both employers were dismissed from this action, their insurers refused to defend McCullough and he filed his third-party action naming them as defendants.

One of the reasons McCullough was denied coverage was because he was driving an automobile owned and titled in his wife's name. Another reason alleged by the insurance companies is that these policies were intended to protect the *employer* on principles of respondeat superior and not the individual employee. McCullough argues that both policies covered him at the time of this accident and that he was serving both employers. Immediately prior to the accident McCullough had completed a call in Lans-

dale on a prospective customer of Davis, and he was on his way to Hatboro, *via Willow Grove,* in an attempt to recover a debt owing by the Hull Corporation to T. & C. He planned on having his lunch in Willow Grove, but before he ever left Lansdale the accident occurred.

American Motorists acknowledged that McCullough was operating his wife's car on Davis' business and his negligence caused the accident. As a result of this determination, American Motorists negotiated a settlement of $4190.00 with the plaintiff. Now, this company seeks contribution or indemnity via a cross-claim against American Hardware Mutual alleging that its policy *alone* covered both McCullough and T. & C. American Hardware argues that McCullough was still operating within the scope of Davis' employment.

McCullough employed an attorney to represent him during his defense of the plaintiff's action. It has been agreed by all parties that the fair value of these legal services is $400.00 and he seeks to recover this amount in his third-party action.

This unusual set of facts presents a problem of policy interpretation which we feel is dispositive of the entire matter without considering the agency question.

### A. AMERICAN MOTORISTS INSURANCE POLICY

█ The applicable portions of the American Motorists policy provide cov-

erage to persons while they are using a hired automobile with the permission of the named insured.[1] A hired automobile includes within its definition a *loaned* vehicle.[2] The officers of the Davis company recognized this automobile to be a loaned vehicle by their continued acquiescence in McCullough's use of the car on company business. They ratified this arrangement by paying McCullough eight cents a mile for his expenses.

We, therefore, conclude that the American Motorists policy covered McCullough at the time of this accident.

### B. AMERICAN HARDWARE MUTUAL'S POLICY

The American Hardware policy contains an "employer's non-ownership liability endorsement," which reads as follows:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to non-owned automobiles, subject to the following provisions:

"1. Definitions. The words 'non-owned automobile' shall mean a land motor vehicle, trailer or semitrailer not owned by, registered in the name of, hired by or *loaned to the named insured.* The word 'automobile' wherever used in the policy, with respect to the insurance afforded under this endorsement, shall include 'non-

1. "III. *Definition of Insured.* The unqualified word 'insured' includes the named insured and also includes (1) under coverages B and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured, and if the named insured is a partnership, the unqualified word 'insured' also includes any partner therein but only with respect to his liability as such and (2) *under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use*

thereof, *provided the actual use of the automobile is by the named insured or with his permission.* * * * " (Emphasis supplied)

2. Under Paragraph 3 of "Definitions" of the policy, Sub-Section (b) (2) defines a hired automobile as follows:

"(2) Hired Automobile—an automobile used under *contract in behalf of, or loaned to,* the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile." (Emphasis supplied)

owned automobile.' (Emphasis supplied)

"2. Application of Insurance.

"(a) The insurance applies only to (1) the named insured, and (2) any executive officer of the named insured, as insured, except as stated in divisions (a) (1) and (2) of the Definition of Insured agreement of the policy and except with respect to any automobile owned by such officer or by a member of the same household.

"(b) The insurance applies only to the use, by any person other than the named insured, of any non-owned private passenger automobile in the business of the named insured as stated in the declarations, and to the use in such business, by any employee of the named insured, of any non-owned automobile of the commercial type if such use of such automobile is occasional and infrequent."

Paragraph one specifically excludes a *loaned* vehicle from the purview of the definition of a non-owned automobile.

McCullough was president of T. & C., a small, closely-held corporation and he had authority to act for the corporation. He accepted a loan of his wife's car to use it on T. & C.'s business. This use had continued for more than a month so it could not be designated as an infrequent or casual use.

■ Paragraph 2(a) excludes McCullough because he was an executive of T. & C. and the car which he was driving was owned by his wife. Paragraph 2(b) broadens the non-ownership endorsement to cover *any person* using a *non-owned* automobile on the business of the named insured. But, as we have already found, the plain words of this policy exclude a *loaned automobile* from coverage under this endorsement.[3] We must give effect to every word if possible and we cannot conjure a doubt where none exists. Therefore, we hold that American Hardware Mutual is not liable for contribution or indemnity regarding the *settlement* because the vehicle used by McCullough was excluded from the ambit of its policy. However, we do find that American Hardware Mutual is liable for contribution to American Motorists Insurance Company for the legal expenses incurred by McCullough in defending the plaintiff's claim.

■ An insurance policy embodies two promises to the insured: First, to indemnify the insured against any *liability* covered by the policy, and secondly, to defend the insured against any suit alleging an *injury* covered by the policy. Lee v. Aetna Casualty and Surety Co., 178 F.2d 750 (2 Cir. 1949).

■ American Hardware's policy in Paragraph II [4] of the insuring agreement contains a promise to defend the insured against any suit alleging injury *no matter how groundless*. A determination of the insurer's duty to defend is made from the contents of the complaint. Lee v. Aetna Casualty and Surety Co., supra, 178 F.2d at p. 753.

In the instant case, the contents of the complaint allege an injury covered

---

3. 18 P.L.E. Insurance § 93; 45 C.J.S. Insurance §§ 827–829.

4. "II *Defense, Settlement, Supplementary Payments*
"With respect to such insurance as is afforded by this policy for bodily injury liability and for such property damage liability, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

by the policy. Under the policy, Mc-Cullough was an additional insured because he was President of T. & C. It was only his *use of the loaned vehicle* which was excluded from the coverage of the policy.

None of the pleadings filed in this case clearly showed that American Hardware had no duty to defend McCullough. It was only after this Court conducted a hearing and made a searching analysis of the policy that we reached the conclusion McCullough was driving a vehicle not covered by the contract.

As Judge Learned Hand said in the Lee case, supra, 178 F.2d at p. 753:

" * * * When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it."

This is the law of Pennsylvania [5] and, therefore, the law of this Circuit.[6]

All facts and conclusions of law set out in this Opinion shall constitute the Court's findings as agreed by all the parties.

ORDER

And now, this 24th day of April, 1963, it is the judgment of this court that:

1. William A. McCullough, Jr., was personally insured by the American Motorists Insurance Company and this insurer alone is liable for the full amount of the $4190.00 settlement of the plaintiff's claim.

2. Judgment is entered in favor of William A. McCullough, Jr., in the sum of $400.00 against *both* insurers for his legal expenses.

3. Judgment is entered in favor of the American Motorists Insurance Company on its cross-claim for contribution as to the $400.00 legal expenses *only*.

---

5. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484, 72 A.L.R. 2d 1242 (1959).

---

6. Pittsburgh Plate Glass Company v. Fidelity & Casualty Company of New York, 281 F.2d 538 (3 Cir. 1960); Felix Clauss & Sons v. American Automobile & Insurance Co., 175 F.Supp. 641 (E.D.Pa.1959).