Meyers v. Aetna Life Insurance Company

2

Before Milner, P. J., and Waters and Ullman, JJ.

*Ballard, Spahr, Andrews & Ingersoll,* for plaintiff.

*Rawle & Henderson,* for defendant.

WATERS, J., November 22, 1965.—Defendant has appealed from this court's order dismissing its exceptions to the trial judge's findings and verdict in favor of plaintiff in the sum of $7,376, with interest from December 6, 1963. Plaintiff commenced this suit against his insurance carrier to recover moneys paid by him for the care of his son at the Victoria (Texas) Unit of the Devereux Foundation from March 22, 1963, to June 8, 1964. The principal question presented is whether or not the Devereux Foundation is a "hospital" within the scope and definition of the insurance policy purchased by plaintiff. Defendant is the insurance carrier under a government-wide indemnity benefit plan authorized by Federal statute and contracted with the United States Civil Service Commission.

Defendant did not offer any testimony at the time of trial. Plaintiff submitted the depositions of Richard C. Danko, administrator of the Victoria Center, and Dr. George A. Constant, a member of the Board of Trustees of Devereux Foundation, Inc., and chief consul-

tant to the Victoria Center. Plaintiff also testified in his own behalf.

The contract of insurance defines the term "hospital" as follows:

"The term 'hospital' means only an institution which is engaged primarily in providing, for compensation from its patients, facilities for diagnosis and treatment of bed patients under the supervision of a staff of doctors and which provides the services of registered nurses (R. N.) 24 hours a day. Sanitariums for care and treatment of tuberculosis and of mental, psychoneurotic and personality disorders are included if they meet these requirements. Also included are those hospitals of the Armed Forces and of the Public Health Service which meet all of these requirements except that covered by the words 'for compensation for its patients' ".

The evidence adduced at the trial established that plaintiff's son was a resident at a facility operated by Devereux Foundation for emotionally disturbed children located at Victoria, Texas. Devereux is a nonprofit corporation which maintains facilities for emotionally disturbed children at Devon, Pa., Victoria, Texas, and Santa Barbara, Calif. During this hospitalization period, the boy received specific medical and psychiatric treatment, the purpose of which was to so reduce his disability as to enable him to live outside an institution providing custodial care. He went to the Victoria branch from the Devon branch on the recommendation of two doctors.

The Victoria Unit is a residential treatment center for the care and treatment of children with mental disorders ranging from severe brain damage to emotional disturbance. It provides specific medical or psychiatric treatment for children suffering from mental, psychiatric and personality disorders. A program of environmental therapy is provided at the Victoria Unit

for emotionally disturbed children. Such treatment consists of an overall program designed to allow the child to mature and to resolve the underlying conflicts which were creating his symptomatology. Such treatment includes chemotherapy and psychotherapy as part of its total program of "environmental" or "milieu" therapy.

We direct our attention, then, to the definition in the insurance contract, bearing in mind the appropriate rules of construction. The only rule we need mention is that where the meaning and intent of the words used in a policy are unclear or obscure, any doubts or ambiguity must be resolved in favor of the insured, since it was the insurer who wrote the contract: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 587 (1959).

There is no question but that the institution is engaged primarily in providing treatment "for compensation". The next phase, "providing . . . facilities for diagnosis and treatment", is challenged. Defendant contends that the facilities available are only those generally associated "with any boarding school or residential college". We think it is obvious that the Victoria Unit is by no means a mere boarding school or educational institution, as stressed by defendant. As described by Dr. Constant, it "is quite unique in that . . . it is a residential center for emotionally disturbed children . . . The staff that has been built up around this kind of disorder is an excellent one and one that has been able to handle or take care of and help and treat these particular young adults and youngsters . . ." He states that medical or psychiatric treatment is provided specifically for mental, psychoneurotic and personality disorders.

The parties overlook the simple significance, for example, of the fact that there were apparently 110 patients at Devereux with *140 personnel* when plaintiff's

son was a patient, and presently *185 personnel* with *155 patients*. That is not a "school staff"; that is a "medical" staff. Of the 185 personnel, only 20 are teachers, and of the 140 personnel, only 14 to 15 were teachers.

The contention that the Victoria Unit does not contain surgical, laboratory and X-ray facilities and other equipment for the treatment of physical illnesses is not valid. There is nothing in the definition of the term "hospital" which requires that such facilities be provided. As Dr. Constant pointed out, such facilities are not essential in a modern psychiatric institution, and certainly not where other hospitals with such specialized facilities are available, as in the case of the Victoria Unit.

Counsel for plaintiff has directed our attention to the rejection of a similar contention by the Florida District Court of Appeal, Third District, no. 64-242, in an opinion filed on January 19, 1965, in the matter of Travelers Ins. Co. v. Esposito on appeal from the Civil Court of Record of Dade county. In that case, also involving the Victoria Unit, the court stated:

"Appellant contends the requirements of the above quoted definition were not met because in this 'hospital' the diagnostic and medical facilities were limited and it was lacking in facilities for operative surgery. Appellee answers that the deposition of Dr. Constant discloses ample diagnostic and medical facilities, and there was an affiliation with another hospital for diagnostic and surgical facilities. Such an arrangement with another hospital was sufficient compliance with the requirements to have facilities for diagnosis and operative surgery. It was so held in a similar situation by the United States Court of Appeals in the Ninth Circuit in Reserve Life Insurance Company v. Marr, 9th Cir. 1958, 254 F. 2d 289".

We ground our view on an even broader, and what

we conceive to be a more realistic, interpretation. It must be borne in mind that the policy, in a single, all-embracing definition, purports to cover the entire "genus" hospital. There are many types of hospitals, and the definition cannot be read with an unreasonable rigidity so as to require immediate facilities; for example, for operative surgery, where such surgery is simply not indicated, required or to be expected by the medical problems involved.

Defendant also contends that "the inclusion of the words 'bed patients' in the policy definition of 'hospital' quite clearly restricts a qualifying institution to one which treats persons who suffer from a physical or mental disability of such severity that their confinement to a bed is to be expected". We do not agree, and such contention ignores the broad applicability of the term "hospital" and defeats the inclusion of psychiatric patients, though the policy itself promised such coverage.

In section V-A (2) of the policy, coverage is indicated for certain inpatients with mental, psychoneurotic and personality disorders. Medically, however, as Dr. Constant pointed out, *modern environmental therapy calls for keeping mentally disabled persons "out of bed"*. The expectation of confinement to bed is a conjecture adverse to the policyholder. As to psychiatric patients, the only requirement is that a bed be available and assigned to the patient. He need not occupy it contrary to accepted medical treatment. The more appropriate view is that the policy intends to exclude outpatients. This view is fortified by a reference to F-5, wherein defendant states: "A definition of bed patients is not restricted to patients confined twenty-four hours a day to a bed". In this case, the simple fact was that plaintiff's son was assigned to a bed and he was a patient, not just a student as argued by defendant. The exaggeration of the phrase "bed patients"

and a rigid and literal interpretation of it in the psychiatric field would render the phrase a definitional trap, so that coverage would be illusory. As Dr. Constant testified, in psychiatric language the very word "beds" is not used for patients, but rather the word "spaces", because modern treatment requires that these patients be kept out of bed. He stated: "We don't consider them patients in the sense of having 'to be put to bed' but they are considered as patients".

Defendant also contends that the Victoria Unit is not "under the supervision of a staff of doctors"; that "Victoria did not have a single medical doctor in residence". There is certainly nothing in the policy about doctors "in residence", and the evidence is quite clear that the treatment is under the supervision of a staff of doctors. Defendant here also endeavors the insertion of a phrase and meaning it did not use in selling its product to the public. The rules of construction are to the opposite effect, and we will not add the word "resident" to the phrase "staff of doctors". The term "doctors", as used in the insurance contract (P-2, page 3), is restricted to medical doctors and would not be satisfied by the use of a psychologist. However, the record shows that the therapy program is under the direct supervision of Dr. Constant, who is a qualified psychiatrist and who is a board-certified and licensed medical doctor in Texas. There are eight other doctors associated with the Victoria Unit who are available for consultation and treatment. These doctors form part of a professional team which supervises the care and treatment of the children at Devereux. They are on call and examine and treat the children at the facility as required. The fact that during the one and one-half years that plaintiff's son was there, he required minimal physical, as distinguished from psychiatric, attention is quite irrelevant to the question of whether such attention was available under a staff of

doctors. The record shows that an entire staff of doctors was available for treatment and consultation, as well as supervision.

Dr. Constant admitted that Devereux did not have "resident physicians on the facility"; but he made it quite clear that "they are available, I was available on twenty-four hour call. . . ." When defendant endeavored to make it appear that he, and the others, operated only as a consultant, he stated that it was true that they worked in a sense "piecework . . . to treat some particular child . . . but, in general our work has been to work very closely with them and actually on a day to day basis . . ." He made it quite clear that they are not a resident staff in the sense of living on the place, "but, we are a resident staff as much there as we are, say, with the citizens of Memorial Hospital or De Tar Hospital and so on". Dr. Constant testified flatly that "the type of psychiatric care and treatment offered (is) under the supervision of a staff of doctors". He also stated that he supervised the care and treatment of plaintiff's son.

Dr. Constant testified that the boy had symptoms characterized by being schizoid in nature, with paranoid ideation in acting out problems. Individual psychiatric treatment in Pennsylvania did not show progress, and he was, therefore, placed "in a residential treatment center". Dr. Constant stated, "he received milieu therapy, which consists of an over-all program designed to allow him to mature and resolve the underlying conflicts which were creating his symptomatology". He received supervised chemotherapy as well as psychotherapy, The dispensation of drugs is done under the direction of the psychiatrists, Dr. Constant and Dr. Garcia. The boy received individual psychotherapy as well as group therapy. Dr. Constant stated that *the school, recreational and academic activities were part of his therapy;* that *this milieu is main-*

*tained to help him uncover his underlying conflicts; the school program is part of his environmental therapy and is part of his medical treatment.* He stated the Devereux plan or program is a functional and chemical approach to the treatment of mental disorders. He stated that Devereux provides for children with emotional and mental disorders much more than a general hospital can.

Defendant also contends that Devereux does not meet the requirements of providing "the services of registered nurses (R. N.) 24 hours a day". Once again, defendant endeavors to broaden this requirement and to use it as a barrier to recovery without regard to whether the "hospital" involved is large or small, specialized or general. Defendant is simply ignoring the testimony of both Dr. Constant and Mr. Danko that the services of a registered nurse were available on a 24-hour-a-day basis. There is nothing in the policy which requires a registered nurse to actually be "on duty" 24 hours a day; the only requirement is that registered nursing service be "provided" when needed, or be available 24 hours a day. The fact that the registered nurse was on actual duty for a period of hours and then was assisted by licensed vocational nurses does not bar a recovery here. Dr. Constant made it clear that the registered nurse was on call *at all times,* and "she would have her licensed vocational nurses *under her supervision* who were there *around the clock"*.

The suggestion that the Victoria Unit is simply a boarding school or educational* institution cannot be

---

* Of interest, it may be noted that in Devereux Foundation, Inc., Zoning Case, 351 Pa. 478 (1945), it was held that Devereux is not an educational institution, but is an institution for accommodating persons mentally deficient, weak or abnormal. Of course, such determination is not in any way determinative in this case. It does, however, have this significance. Defendant insurance carrier, long

accepted. The educational program at Victoria was a part of the total environmental therapy program; it was not the purpose of the program to educate; it was the purpose to cure its patients.

Plaintiff refers to a decision dated August 22, 1962, in Wilkie v. Union Trust Life Insurance Co., wherein the Circuit Court of Dane County, Wisc., held that the Devereux Foundation is a hospital within the terms of a major medical policy. In response to a contention that the facility is a school and not a hospital because it did not provide surgical facilities, the court stated:

"A review of the record convinces me beyond peradventure that Devereux Foundation is a 'hospital' and not a 'school', except that as part of the therapy for mentally ill children, certain teaching is done to facilitate the main chance of improving the child. Calling a horse a rabbit does not make it a rabbit. The position of the defendant insurance company that Devereux Foundation does not provide 'surgical' facilities in no way militates against Devereux as being a hospital where persons are treated for physical or mental illness—attended by regular physicians and psychiatrists, registered nurses and practical nurses, around the clock. There would be no purpose in sending a child, particularly a mentally ill child, to Devereux Foundation except for treatment as a sick child, which is, of course, the primary purpose of anyone entering or being committed to any *hospital*.

"Devereux is a listed hospital of the American Hospital Association (Exhibit 4) and the rigid qualifications for such hospital listing are stated in Exhibit 5.

before it wrote the subject policy, was on notice of the existence of the Devereux type of facility. It could have inserted any clarification it deemed necessary into its policy form. We consider it appropriate to require candor and clarity of the drafter of the policy, and in the absence of such clarity, any and all ambiguity must be resolved in favor of the party paying the premium and against the party receiving such premiums.

This should end the factual inquiry in this case. Devereux Foundation is a listed hospital of the National Association of Private Psychiatric Hospitals. Devereux Foundation is licensed under the Mental Health Act of the Commonwealth of Pennsylvania (Exhibit 2)".

The Wilkie case concerned the Devon Unit of the Devereux Foundation, but its rationale applies to the instant case. Both Devon and Victoria are branches of the same organization, provide similar services and are similar in operation.

Defendant makes over-and-over arguments which draw inferences of fact in its own favor. However, all reasonable inferences of fact must be drawn against defendant and in favor of plaintiff. Thus, defendant "makes much" of the fact that plaintiff's son received little *physical* treatment at the Victoria Unit; but plaintiff was not hospitalized for physical treatment. He was hospitalized for psychiatric treatment, which he did receive. Defendant contends that because the boy lost no time in his education, the unit must have been a school; however, the educational feature was ancillary to the treatment, not vice versa. The boy's advancement in school rather proves the effectiveness and need for the treatment, not that it was a school.

Of some persuasive value, but not critically so, we may note that in "the hospital world", the Victoria Unit is regarded as a hospital, not a school. The Devereux Foundation, including the Victoria Unit, is a member of numerous hospital associations, including the American Hospital Association, American Psychiatric and Psychological Association and the National Association of Private Psychiatric Hospitals. The Victoria Unit is comparable to, and for youngsters more satisfactory than, Meninger's at Topeka, Kansas and the Institute of Living at Hartford, Conn. Dr. Constant stated these institutions also have programs, procedures and treatment and care for mental disorders.

The express inclusion of "sanitariums for care and treatment . . . of mental, psychoneurotic and personality disorders", in our opinion, indicates an intent to cover this type of institution, and the "requirements" of the policy must be interpreted in the light of this inclusion. Otherwise, there is an impossibility for a bona fide coverage of this type of specialized care and treatment except in large general type hospitals. It is not realistic to expect or require surgical facilities or an operating room or laboratory equipment or an iron lung to be of significance in the treatment of psychoneurotic and personality disorders. Dr. Constant quite appropriately states that "the work" done at Devereux is medical treatment. He indicates the unique nature of Devereux and the need for such institutions. In modern medicine, our society is crucially and experimentally concerned with techniques of group psychiatric treatment.

For the foregoing reasons, we found in favor of plaintiff and dismissed defendant's exceptions.