## Finkel, Appellant, *v.* Sun Life Assurance Company of Canada.

*Mark S. Refowich,* with him *Herbert Fishbone* and *Fishbone and Refowich,* for appellant.

*H. Ober Hess,* with him *John F. Oldt,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION PER CURIAM, April 4, 1973:

The six Judges who heard and decided this appeal being equally divided, the judgment is affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that the lower court was in error in granting a summary judgment and holding that a group accident and sickness insurance policy issued to him by his employer, the appellee, did not obligate the appellee to pay certain medical expenses which appellant incurred prior to the termination of the insurance contract.

During the period from July 1, 1968 to May 31, 1969, appellant was employed by the appellee insurance company as an agent. One of the benefits of this employment was the appellee's issuance of a group accident and sickness policy to the appellant. Both parties to the instant matter contributed to the premiums. On December 14, 1968, the appellant sustained injuries to his face and mouth in a snowmobile accident. The appellant was subsequently discharged as appellee's agent on May 31, 1969. This discharge simultaneously terminated the group insurance policy.[1] Appellee, never-

---

[1] "Insurance on any agent insured hereunder will terminate at the earliest of the following dates:

"(a) on the thirteenth day of April next following the two (2) preceding calendar years during which the average remunera-

theless, complied with the policy provisions and paid the medical bills which appellant received prior to the date when the policy lapsed. Appellant, however, had been treated for these same dental and facial injuries subsequent to his discharge as an agent. The appellee has refused to pay these later bills. In essence, the appellant insists that his medical treatment was of a continuing nature. Since this continuing treatment began prior to his release as an agent, appellant contends that the appellee should pay all his medical expenses until his facial and dental treatment has been successfully completed.[2]

In evaluating the appellant's claim, this Court must resolve any ambiguity in the contract of insurance in favor of the insured because the insurer wrote the contract. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A. 2d 484 (1959). An ambiguity indi-

tion for the said period was less than Two Thousand Dollars ($2,000) if his agreement has been in effect for at least two (2) calendar years and if he has not retired on pension.

"(b) the date of termination of his agreement or of his Career Agent's Supplementary Agreement or any other agreement which the Company by announcement substitutes for such Career Agent's Supplementary Agreement, provided that any such termination does not occur as a result of the agent becoming a retired agent."

[2] Section VIII, paragraph 1, of the General Provisions of 7891-GD reads pertinently as follows:

"1. Illness other than pregnancy. When in any benefit year the eligible medical expenses incurred by an agent or by a dependent in respect of illness, other than pregnancy, exceed the deductible amount applicable to such person for such year, then on receipt by the Company of proof of claim as herein required the Company will, except as otherwise provided in this Provision and within the limits of Maximum Benefits herein provided, pay

"(a) for an active agent or a dependent of an active agent:

"(1) 85% of the first $500 of such eligible medical expenses in excess of the deductible amount other than those provided for in (c) of this paragraph;

"(2) 80% of the remainder of such excess expenses other than those provided for in (c) of this paragraph."

cates uncertainty on the part of the parties to the contract; such uncertainty requires that the insurance policy be strongly construed "against the insurer and liberally in favor of the insured so as to effect the dominant purpose of indemnity or payment to the insured. . . ." *Penn-Air, Inc. v. Indemnity Insurance Company of North America,* 439 Pa. 511, 517, 269 A. 2d 19 (1970). Whenever an insurance policy provision is unclear, the presumption favors coverage. *Evans v. Baltimore Life Insurance Company,* 216 Pa. Superior Ct. 425, 428, 268 A. 2d 155 (1970).[3]

---

[3] This view is supported by the Restatement of Contracts §236(d): "§236. Secondary Rules Aiding Application of Standards of Interpretation. Where the meaning to be given to an agreement or to acts relating to the formation of an agreement remains uncertain after the application of the standards of interpretation stated in §§230, 233, with the aid of the rules stated in §235, the following rules are applicable:

. . .

"(d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law.

. . .

"Comment on Clause (d): d. Since one who speaks or writes, can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved against the former in favor of the latter. The other party will ordinarily be the promisee of the promise in question, so that it is generally true that the contract, if ambiguous, will be construed in favor of the promisee; but as the promisor is not invariably the draftsman of his own promise the rule is more exactly that stated in Clause (d). This rule *finds frequent application in regard to policies of insurance, which are ordinarily prepared solely by the insurance company, and therefore, the words of the policies are construed most strongly against it.* In some instances, however, the exact language not only of insurance policies, but of bills of lading and other contracts, is determined by statute. In such cases there is no reason for such an interpretation." (Emphasis added.)

The controversial provisions are as follows:

"The term 'eligible medical expenses' means reasonable expenses incurred by an agent or by a dependent for necessary medical treatment for illness, while the insurance hereunder in respect of such person is in force,

. . .

"An eligible medical expense incurred by an agent or by a dependent for medical treatment will be deemed to be incurred on the date on which such treatment is given and by the person receiving the treatment."

The words "incurred" and "treatment" create the ambiguity. The import of the lower court opinion is that each visit to the doctor's office is a separate treatment; therefore, it is not until the visit takes place that the expense is incurred. This rationale means that the insurer is not responsible for any medical bills originating from visits for medical services subsequent to the date on which the policy terminates.

This interpretation does not account for treatment of a continuing nature. While such treatment must of necessity initiate with a single visit to a physician, successful completion of the treatment may require numerous visits to a doctor over a rather lengthy period of time. " 'Expenses incurred' means that the insurance company is obligated when its insured becomes obligated, i.e., at the date of the contracting for the payment of services to remedy all injuries caused by that accident." *Hoehner v. Western Casualty and Surety Co.,* 8 Mich. App. 708, 718, 155 N.W. 2d 231, 236 (1967).[4] The appellant herein suffered extensive damage to his face and mouth requiring long-term treatment

---

[4] Although the insurance policy involved in *Hoehner* contains slightly different provisions from the one in the instant case, the logic employed by the Michigan court is persuasive and should be followed. See *Maryland Casualty Company v. Thomas,* 289 S.W. 2d 652 (Tex. Civ. App., 1956) error ref. n. r. e.

which began prior to the termination of the instant accident and sickness policy. Since the long-range treatment began before this policy terminated, the expense was incurred while the policy was in force. Thus, the strong construction of the policy against the insurer requires that the appellee pay appellant's medical expenses in light of the expansive meaning given to the words "incurred" and "treatment".[5]

The decision of the lower court should be reversed and the matter remanded for determination of damages suffered by appellant as a result of appellee's breach of contract.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.

---

[5] The failure of appellant to exercise his conversion privilege and buy another accident and sickness policy to supplant the lapsed policy does not free the appellee from its obligation under the policy in question herein.