752 F.2d 71
 AMERICAN CONTRACT BRIDGE LEAGUE
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and Nationwide
Mutual Insurance Company, Aetna Insurance Company
and Aetna Fire Underwriters Insurance Company.
Appeal of NATIONWIDE MUTUAL INSURANCE CO.
 No. 83-1920.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 22, 1984.
Decided Jan. 10, 1985.
 
 1
 Abraham C. Reich (argued), Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., Lee Hazen, Leonard Lake, Dannenberg, Hazen & Lake, New York City, for American Contract Bridge League.
 
 
 2
 Charles W. Craven (argued), Wendy M. Johnston, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Aetna Ins. Co. and Aetna Fire Underwriters Ins. Co.
 
 
 3
 Curtis P. Cheyney, III (argued), James C. Haggerty, Swartz, Campbell & Detweiler, Philadelphia, Pa., for Nationwide Mut. Ins. Co.
 
 
 4
 Before SEITZ and ADAMS, Circuit Judges, and FISHER, District Judge.*
 
 OPINION OF THE COURT
 CLARKSON S. FISHER, District Judge:
 
 5
 This is an appeal by Nationwide Mutual Fire Insurance Co. and Nationwide Mutual Insurance Co. (collectively Nationwide) from the order of the United States District Court for the Eastern District of Pennsylvania granting plaintiff, American Contract Bridge League's (ACBL), motion for summary judgment against defendant Nationwide and denying plaintiff's motion for summary judgment against Aetna Insurance Co. and Aetna Fire Underwriters Insurance Co. (collectively Aetna) and entering judgment in favor of Aetna. Subject matter jurisdiction is founded upon 28 U.S.C. Sec. 1332, based upon the diverse citizenship of the parties. The ACBL filed its motion for summary judgment in the district court seeking a declaration that the defendant insurance companies be required to defend it in another action, Livezey v. American Contract Bridge League, (CA No. 82-3325). The ACBL also sought to have the court compel defendants to pay all costs and expenses incurred in defending itself.
 
 
 6
 The district court held that Nationwide had a duty to defend its insured, ACBL, against Livezey's action and, therefore, assessed the costs of securing an alternative defense on Nationwide when it refused to defend. Aetna's policy, on the other hand, it was also held, did not oblige it to defend the ACBL in the Livezey action.
 
 
 7
 The ACBL is a non-profit corporation organized to promote the playing of duplicate bridge. The ACBL is comprised of local units. The Pennsylvania Contract Bridge Association (PCBA) is one such unit. The Conduct and Ethics Committee of each local unit is charged with enforcing the ACBL's Code of Disciplinary Regulations.
 
 
 8
 Joseph Livezey is a professional contract bridge player. He holds a franchise from the ACBL to operate bridge games in the Philadelphia area. On December 19, 1981, an incident occurred at the Aston Bridge Club involving Livezey. The local Conduct and Ethics Committee held a hearing on the matter in February 1982 and thereafter voted to suspend Livezey from playing bridge under its auspices for six months and placed him on probation for 24 months. Livezey appealed the committee's decision to the Judiciary Committee which affirmed the finding but modified the penalty. In July, 1982 Livezey further appealed to the National Appeals and Charges Committee of the ACBL. That committee affirmed the initial decision and reinstated Livezey's original penalty.
 
 
 9
 On July 31, 1982, Livezey instituted a suit in the district court against the ACBL, the members of the local Conduct and Ethics Committee, and four other individuals. The complaint contended that the discipline imposed by the ACBL was unlawful. Livezey complained of abuse of monopoly power and unfair competition by the ACBL, as well as defamation by the named defendants in their individual and official capacities.
 
 
 10
 Nationwide issued a special multi-peril insurance policy to the ACBL on January 1, 1981. This policy was effective from January 1 to April 1, 1982, and provided, in part, that
 
 
 11
 [t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 
 
 12
 Nationwide policy No. 63SM106-473-0001. Endorsement 1-113, II-A (emphasis added). Personal injury is defined by the policy to include:
 
 
 13
 "a publication or utterance ... of a libel or slander or other defamatory or disparaging material...."
 
 
 14
 Endorsement 1-113, II-D-3(a).
 
 
 15
 On April 1, 1982, Aetna issued its multi-peril policy to the ACBL. This policy provided coverage from April 1, 1982, through April 1, 1983 for personal injury substantially similar to that defined by the Nationwide policy. The Aetna policy provided, however, that
 
 
 16
 [t]his insurance does not apply:
 
 
 17
 * * *
 
 
 18
 (3) to personal injury or advertising injury arising out of a publication or utterance of a libel or slander, or a publication or utterance in violation of an individual's right of privacy, if the first injurious publication or utterance of the same or similar material by or on behalf of the named insured was made prior to the effective date of this insurance....
 
 
 19
 Aetna policy No. CPP 45-71-75, Broad Form Comprehensive General Liability Endorsement II(B)(3). (emphasis added).
 
 
 20
 In the district court, the parties disagreed as to which state law should be applied to the issues in this case. The ACBL and Aetna agreed that the applicable state law should be Pennsylvania's. Nationwide argued that Tennessee law should be applied because the ACBL's principal place of business is in that state and Nationwide's policy of insurance was negotiated, issued and delivered in Tennessee.
 
 
 21
 A district court's choice-of-law decision is governed by the choice-of-law rules of the forum state. Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, the district court in this diversity case was obliged to follow Pennsylvania's choice-of-law rules. Those rules require application of the substantive law of Pennsylvania. In Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court adopted a flexible choice-of-law rule which permits an "analysis of the policies and interests underlying the particular issue before the court" and a determination of which jurisdiction is most intimately concerned with the outcome of the litigation. Id. at 21, 22, 203 A.2d 796.
 
 
 22
 Both Nationwide and Aetna are licensed to do business in Pennsylvania. The Livezey suit has been brought in Pennsylvania and involves the Pennsylvania Contract Bridge Association, as well as several Pennsylvania residents. The harm alleged in the Livezey suit occurred in Pennsylvania. Clearly, under Pennsylvania's "policy, interests and contacts test," it is Pennsylvania law which should be applied to resolve the present controversy.
 
 
 23
 Pennsylvania law on the question of an insurer's duty to defend its insured is well settled. In consideration for premiums paid, the insurer contractually obligates itself to defend its insured. This obligation arises whenever allegations against the insured state a claim to which the policy potentially applies even if the allegations are "groundless, false or fraudulent." Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 58, 188 A.2d 320 (1963).
 
 
 24
 Clearly the complaint filed by Livezey contains certain allegations and names of certain individual defendants not covered by the Nationwide policy.[1] Although the complaint is not as specific as it might be, taken as a whole it provided sufficient information to put Nationwide on notice that a claim of personal injury, potentially covered by its policy, was being raised against its insured. Livezey's answers to interrogatories further indicate that the allegations raised in the complaint were likely within the scope of coverage provided by Nationwide's policy.[2]
 
 
 25
 Nationwide contends that even if it is liable for the defense of the defamation claims, it has no obligation to pay for the defense of the antitrust claim. Under Pennsylvania law, however, once a third party has raised allegations against an insured, which potentially fall within the coverage provided, the insurer is obligated to fully defend its insured until it can confine the possibility of recovery to claims outside the coverage of the policy. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 753 (2d Cir.1949). See also Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of N.Y., 281 F.2d 538 (3d Cir.1960).
 
 
 26
 Nationwide has asserted that the district court erred in concluding that the members of the ACBL's local Conduct and Ethics Committee were covered by its policy. By its terms, the policy extends coverage to "any executive officers, director or stockholder thereof while acting within the scope of his duties as such." Nationwide policy, Section II, page 2. Based on the evidence presented,[3] the district court found that "[t]he members of the Conduct and Ethics Committee were acting as officers of ACBL in the conduct of the disciplinary proceeding and rendered their decision as part of ACBL's expected regulatory and disciplinary functions." ACBL v. Nationwide Mutual Fire Ins. Co., Civil Action No. 83-1312 (E.D.Pa. filed Dec. 14, 1983) at 5. We agree that the Conduct and Ethics Committee members could potentially qualify as insureds under Nationwide's policy and that, therefore, Nationwide was obliged to defend them in the Livezey action.
 
 
 27
 The district court concluded that the ACBL and the members of the Conduct and Ethics Committee are entitled to reimbursement from Nationwide for reasonable attorney's fees and defense costs. It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril. Cadwallader v. New Amsterdam Casualty Company, 396 Pa. at 589, 152 A.2d 484; Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y., 281 F.2d at 540.
 
 
 28
 Pennsylvania law clearly recognizes that when an insurer breaches its duty to defend, the appropriate measure of recovery is the cost of hiring substitute counsel and other defense costs. Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. at 60, 188 A.2d 320; King v. Automobile Underwriters, Inc., 409 Pa. 608, 609, 187 A.2d 584 (1963). By virtue of its refusal to defend the ACBL and the members of the Conduct and Ethics Committee as per its policy of insurance Nationwide became liable to them for the costs incurred in securing an alternative defense against these claims.
 
 
 29
 In contrast to the result reached in Cadwallader and other cases in which a duty to defend was found to exist, the Pennsylvania courts have held that an insurer is under no obligation to defend when the suit against its insured is based on a cause of action excluded from the policy's coverage. See Wilson v. Maryland Casualty Co., 377 Pa. 588, 105 A.2d 304 (1954); Seaboard Industries Inc. v. Monaco, 258 Pa.Super. 170, 179, 392 A.2d 738 (1978). The district court found the first alleged defamatory statement was made prior to April 1, 1982, the effective date of the Aetna policy. The Aetna policy expressly excludes coverage of personal injury based on a libel or slander occurring "prior to the effective date of this insurance" as cited above. Thus, the district court correctly found that Aetna was not obliged to defend the ACBL or the members of the Conduct and Ethics Committee.
 
 
 30
 In its appeal, Nationwide argued that the district court erred in granting summary judgment in favor of Aetna. In response, Aetna argued that Nationwide lacks standing to challenge the judgment entered in its favor. The ACBL argued that Nationwide's arguments regarding Aetna have no bearing on the issue of Nationwide's duty to defend it. We find it unnecessary to address the question of standing. Having concluded, as a matter of law, that Nationwide was under a duty to defend the ACBL, we find that the outcome of the ACBL's motion for summary judgment against Aetna had no relevance to a determination of Nationwide's obligations.
 
 
 31
 In conclusion we find that Nationwide was under a contractual obligation to defend the ACBL and the members of the local Conduct and Ethics Committee. As long as Livezey's complaint alleged an injury which was potentially within the coverage provided by its policy, Nationwide was required to defend until it could confine Livezey's claims to a recovery outside the policy. By refusing to defend, Nationwide breached its duty and became liable to its insureds for the costs incurred in defense of the matter, including reasonable attorneys' fees. The judgment of the district court is affirmed.
 
 
 
 *
 Hon. Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 The parties agree that the antitrust allegations of Livezey's complaint are not covered by the policy
 
 
 [2]
 The district court in its opinion stated that "Livezey's Answers to Interrogatories increase the likelihood that Livezey charges the ACBL with making defamatory and disparaging remarks." ACBL v. Nationwide Mutual Fire Ins. Co., Civil Action No. 83-1312 (E.D.Pa. filed Dec. 14, 1983) at 11
 Appellants argued that the district court erred in considering Livezey's answers in granting summary judgment. "This Circuit has taken the position that under F.R.Civ.P. 56 a court may take judicial notice of its own public records containing sworn testimony, affidavits and similar material described in F.R.Civ.P. 56(c)." United States v. Webber, 396 F.2d 381, 386 n. 10 (3d Cir.1968); United States v. City of Philadelphia, 140 F.2d 406, 408 (3d Cir.1944). See also Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d. Vol. 10a, Sec. 2723.
 
 
 [3]
 Among the evidence presented to the district court was a letter, dated September 8, 1982, from J.D. Vergho, Claims Attorney for Nationwide, to counsel for the ACBL. In this letter the ACBL and the members of its conduct and ethics committee were recognized by Nationwide as insureds under the terms of its policy