ANGLO–AMERICAN INSURANCE COMPANY and Colin Spreckley, an Underwriter at Lloyd's London, on behalf of himself and all those other Underwriters subscribing to Policy No. 595/D0011400I, Plaintiffs,

v.

Emil J. MOLIN, Theodore D. Nering, Frederic S. Richardson, Bernard D. Richardson, Mark A. Alexander, Joseph S. Breakey, Thomas Matayjasik, James Oas, Harry M. Stokes, Steven C. Whetstone, Aaron Yakov–Nagar, David Smith, Barry S. Feldman, Leon A. Larosa, Charles N. Coatesworth, and Insurance Commissioner of Pennsylvania, Defendants.

Commonwealth Court of Pennsylvania.

Heard Jan. 24, 1996.

Decided Feb. 27, 1996.

Publication Ordered March 22, 1996.

James J. Binns, Christopher J. Graham, Marie Appleby and Erika L. Austin, for Plaintiffs.

George Bochetto, for Defendant, Frederic S. Richardson.

Walter Weir, for Defendants Theodore Nering and James Oas, David L. Jacobsen, for Defendant, Barry Feldman.

Joseph M. Fioravanti, for Defendant, Emil J. Molin.

Before PELLEGRINI, J.

PELLEGRINI, Judge.

Presently before this Court is a motion for preliminary injunctive relief filed by Frederic S. Richardson, Emil J. Molin, and Theodore D. Nering (Richardson Defendants) seeking to enjoin Anglo–American Insurance Company and Colin Spreckley, an Underwriter at Lloyds' London (Underwriters) from refusing to fund their defense costs under Policy No. 595/D0011400I (1994 Policy).[1] The Richardson Defendants contend that the numerous allegations set forth in *Maleski v. Corporate Life Insurance Co.*, 2 M.D. 1995 (*Maleski* action), fall within the coverage provided under the 1994 Policy, and therefore, the Underwriters are obligated to fund their defense in that action.

We begin by observing several well-established principles of law concerning the issuance of a preliminary injunction. A preliminary injunction may be granted only where the moving party establishes the following elements: (1) the relief is necessary to prevent immediate and irreparable harm that cannot be compensated by damages; (2) greater injury will occur from denying the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed prior to the alleged

---

1. The motion for a preliminary injunction was filed as a supplemental pleading in a declaratory judgment action commenced by the Underwriters. Although we have grave doubts as to whether such a motion can be filed by the Richardson Defendants, no party has objected to it.

wrongful conduct; (4) the alleged wrongful conduct is manifest; and (5) the moving party's right to relief is clear. *Lewis v. City of Harrisburg,* 158 Pa.Cmwlth. 318, 631 A.2d 807 (1993). Being an extraordinary remedy, a preliminary injunction should not issue if the moving party's right thereto is not clear. *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 207 A.2d 768 (1965); *Schaeffer v. Frey,* 403 Pa.Superior Ct. 560, 589 A.2d 752 (1991).

The Richardson Defendants contend that they have satisfied all of the elements required for a preliminary injunction. The Underwriters do not argue that the Richardson Defendants do not meet the first four elements set forth above. Instead, they contend that the defense costs of the *Maleski* action are not covered by the 1994 Policy, because they interrelate to prior wrongful acts committed by the Richardson Defendants that are covered under a previous insurance policy. The resolution of the present case, therefore, requires the interpretation of the terms of the 1994 Policy to determine whether the defense costs from the *Maleski* action are reimbursable under that Policy.

■ In interpreting an insurance policy, this Court must read the policy in its entirety, giving the words their plain and proper meaning. *Monti v. Rockwood Insurance Co.,* 303 Pa.Superior Ct. 473, 450 A.2d 24 (1982). The policy must be interpreted as a whole, and this Court should not focus upon a technical, precise and narrow interpretation of only one clause of the contract. *Everett Cash Mutual Insurance Co. v. Krawitz,* 430 Pa.Superior Ct. 25, 633 A.2d 215 (1993). However, if the terms used in an insurance policy are defined in that policy, then the given definitions control this Court's interpretation of the coverage of that policy. *Peerless Dyeing Co. v. Industrial Risk Insurers,* 392 Pa.Superior Ct. 434, 573 A.2d 541 (1990), *petition for allowance of appeal denied,* 527 Pa. 636, 592 A.2d 1303 (1991). The

insured may not avoid the application of a clear and unambiguous limitation clause in the insurance policy by asserting that it is ambiguous, especially when the allegedly ambiguous term is defined in the policy. *See Ostroff v. Keystone Insurance Co.,* 357 Pa.Superior Ct. 109, 515 A.2d 584 (1986), *petition for allowance of appeal denied,* 515 Pa. 582, 527 A.2d 542 (1987). Given these principles of insurance policy construction, we turn now to the policy at issue in the present case.

### I.

#### A. Policy Provisions.

On January 29, 1993, the Underwriters issued a Directors' and Officers' Liability and Company Reimbursement Policy (1993 Policy) to American Homestead, Inc., the parent corporation of Corporate Life Insurance Company (Corporate Life). The 1993 Policy, which provided coverage from the date of issuance until December 31, 1993, contained an aggregate limit of liability of $1.5 million. On January 29, 1994, the Underwriters issued another Directors' and Officers' Liability and Company Reimbursement Policy (1994 Policy) to American Homestead, Inc. The 1994 Policy, which expired on December 31, 1994, also contained an aggregate limit of liability of $1.5 million. Both the 1993 and 1994 Policies are "claims made" policies[2] containing the following notice:

NOTICE: THIS POLICY SUBJECT TO ITS TERMS APPLIES ONLY TO ANY CLAIM MADE AGAINST THE DIRECTORS AND OFFICERS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS COSTS, CHARGES AND EXPENSES AND COSTS, CHARGES AND EXPENSES SHALL BE APPLIED TO THE RETENTIONS. THIS POLICY

---

2. Under a "claims made" policy, the insurer is obligated to reimburse the insured for losses arising out of any *claims* made during the policy *period,* irrespective of when the conduct underlying the claim actually occurred. With an occurrence policy, on the other hand, the insurer

agrees to pay for any losses sustained by the insured that result from claims based upon conduct that occurred only during the policy period. *Federal Savings & Loan Insurance Corporation v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989).

DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND THOSE INSURED UNDER THE POLICY.

Additionally, in the Insurance Clauses of both the 1993 and 1994 Policies, the Underwriters agreed to:

pay on behalf of the Directors and Officers Loss resulting from any Claim first made during the Policy Period or the Optional Extension Period, if applicable, against any of them for a Wrongful Act, where the Company has not indemnified them for such Loss.

Article III of the 1994 Policy sets forth numerous exclusions from coverage by providing that

Underwriters shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers:

.    .    .    .    .

B. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) any Wrongful Act or any fact, circumstance or situation, event or transaction which has been the subject of any notice given prior to the effective date of this Policy under any prior policy, or

(2) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such notice, would constitute Interrelated Wrongful Acts;

The 1994 Policy also contains an Interrelationship and Date of Claim Clause which provides that:

More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts of one or more of the Directors and Officers shall be deemed to constitute a single Claim and such single Claim shall be deemed to have been made at the earlier of the following times:

(1) the time the earliest of any Claim within such single Claim was first made; or

(2) the earliest time at which notice was given under any policy of insurance of any Wrongful Act or any fact, circumstance, situation, event, or transaction which underlies any Claim within such single Claim.

The 1994 Policy's definition section explains the various terms used in the Policy. "Claim" is defined as "any judicial or administrative proceeding seeking a binding adjudication of the liability of the Directors and Officers for damages or other relief, including any appeal therefrom." "Loss" is defined as "damages, settlements and Costs, Charges and Expenses." A "Wrongful Act" is defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by any of the Directors and Officers, individually or collectively, in the discharge of their duties solely in their capacity as Directors and Officers." "Interrelated Wrongful Acts" are defined as "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."

As to the provision of notice of a claim or allegations of wrongful acts to the Underwriters, the 1993 and 1994 Policies contain the following Notification provision:

A. If during the Policy Period ... any Claim is made against any of the Directors and Officers, the Company and the Directors and Officers shall, as a condition precedent to their right to any coverage under this Policy, give to Underwriters notice in writing as soon as practicable of any such Claim but in no event later than sixty (60) days after such Claim is first made.

B. If during the Policy Period ... the Directors and Officers of the Company first become aware of a specific Wrongful Act, and if the Directors and Officers or the Company shall, during such period, give written notice to Underwriters as soon as practicable of:

(1) the specific Wrongful Act and

(2) the consequences which have or may result therefrom, and

(3) the circumstances by which the Directors and Officers or the Company first became aware thereof,

then any Claim not otherwise excluded by the terms of this Policy subsequently made against the Directors and Officers arising out of such Wrongful Act shall be deemed for the purposes of this Policy to have been made at the time such written notice was given.

### B. Notice Under the 1993 Policy.

On March 30, 1992, the Pennsylvania Insurance Department issued an *ex parte* suspension order suspending the business of Corporate Life Insurance Company (Corporate Life) based upon a finding that Corporate Life was insolvent. An April 3, 1992, Corporate Life petitioned this Court to terminate the *ex parte* suspension order; *Corporate Life Insurance Company v. Chronister*, 144 M.D.1992. On March 31, 1993, almost one year later, Corporate Life requested this Court to issue a rule to show cause why a purported settlement agreement should not be enforced against the Insurance Department. Corporate Life contended that it and the Insurance Department had engaged in negotiations and had reached a settlement agreement regarding the management of Corporate Life's assets and the suspension of its business. Additionally, Corporate Life requested this Court to deny the Insurance Department's request for leave to withdraw the liquidation petition that had been filed with this Court. On May 7, 1993, the Insurance Commissioner filed an "Opposition to Enforce Settlement and Response to Corporate Life Insurance Company's Objection and Petition to Strike Plaintiff's Praecipe to Withdraw Petition for Liquidation" (Opposition Petition). The Insurance Commissioner challenged Corporate Life's contention that the parties had reached a settlement of the actions. Instead, the Insurance Commissioner argued that it was unwilling to settle because Corporate Life had engaged in some business despite the suspension order and had made fraudulent misrepresentations during the settlement process.[3] Despite making allegations of wrongful conduct, the Insurance Commissioner did not, at that time, assert any claims against the officers and directors of Corporate Life.

On May 25, 1993, pursuant to the notification provisions of the 1993 Policy, counsel for Corporate Life advised the Underwriters of potential claims that may be asserted against the Officers and Directors based upon the allegations contained in the Opposition Petition. Corporate Life's counsel stated that:

This document, filed under seal with the Commonwealth Court of Pennsylvania, alleges certain actions which if proven to be true, could give rise to a claim under the above referenced policy.

The acts alleged to be "Wrongful Acts" as that term is defined in the policy included: self-dealing, falsifying assets; and improper investing. If proven, the individual directors and officers could be subject to liability in excess of the policy limits.

On June 4, 1993, the Insurance Department filed a liquidation petition (Liquidation Petition) in this Court. In an order dated July 2, 1993, this Court appointed an overseer to determine the financial condition of Corporate Life. Also in that order, Corporate Life and the Insurance Department agreed not to pursue any actions against one another pending the issuance of the overseer's report. *Maleski v. Corporate Life Insurance Co.*, 175 M.D.1993. The order, although eventually resulting in this Court's placing Corporate Life into liquidation, did not allege any wrongful acts on the part of its officers and directors.

Counsel for Corporate Life notified the Underwriters of this Court's July 2, 1993 order, indicating that it addressed the Opposition Petition and changed the potential claims that were noticed in the May 25, 1993 claim letter. Corporate Life's counsel stated that:

---

**3.** This action, entitled *Corporate Life Insurance Company v. Chronister*, 144 M.D.1992, has been placed under seal. Therefore, the allegations made in that action cannot be discussed in depth in this Opinion.

We direct your attention to paragraph 7 of the order wherein the Department of Insurance has agreed not to pursue any claim against Corporate Life Insurance Company or its officers or directors. You will also note that the Statutory Liquidator maintains the right to bring any such claim. Upon reading the order as a whole, however, you will see that any potential claim by the Statutory Liquidator would, in all likelihood, not be brought, if at all, until 1995.

Underwriters subsequently informed Corporate Life that it was considering the claim letters to be potential claims under the 1993 Policy and requested more substantive detail concerning the factual allegations that were made against the Officers and Directors.

### C. Notice Under the 1994 Policy.

On December 29, 1994, the Insurance Commissioner, acting in her capacity as the Statutory Liquidator of Corporate Life (Statutory Liquidator) filed a praecipe with this Court naming the Richardson Defendants, and others, as defendants therein. *Maleski v. Molin et al.*, No. 2 M.D.1995 (*Maleski* action). On January 4, 1995, this Court issued a writ of summons in that case, and the Statutory Liquidator filed a complaint on June 19, 1995. In that 260 paragraph complaint, the Statutory Liquidator alleges seven counts of wrongdoing against the named defendants. They are:

● Count I—Breach of Fiduciary Duty to Corporate Life, its policyholders and creditors;

● Count II—Fraud by concealing the true financial condition of Corporate Life from the public, policyholders and the Insurance Department;

● Count III—Negligence in managing Corporate Life and controlling its assets;

● Count IV—Waste and Diversion of Corporate Life Opportunities and Assets by engaging in transfers of Corporate Life assets for the benefit of themselves and their other companies to detriment of Corporate Life;

● Count V—Breach of Contract Against Defendants Molin and Nering by their fail-ure to perform their obligations and duties under a consulting agreement;

● Count VI—Recovery of Fraudulent Transfers that were made while Corporate Life was insolvent; and

● Count VII—Recovery of Unlawful Investments that violated provisions of Pennsylvania Insurance Law and Regulations.

Beginning with the Statutory Liquidator's filing of the praecipe with this Court on December 29, 1994, the Richardson Defendants made numerous requests to the Underwriters to fund their defense costs in the *Maleski* action under the 1994 Policy which the Underwriters denied.

The Richardson Defendants then filed the instant motion for a preliminary injunction to have their defense costs funded, contending that their claim was timely made under the 1994 Policy. For their part, the Underwriters contend that:

● under Clause III.B and the Interrelationship and Date of Claim Clause of the 1994 Policy, the allegations of wrongdoing set forth in the *Maleski* action are interrelated to the wrongful acts noticed in 1993;

● even if the allegations are not interrelated, the Underwriters are required to fund only those claims based upon conduct arising under the 1994 Policy and no other;

● that the Richardson Defendants' notice of the *Maleski* action was not timely; and

● in no event do they have to fund the Richardson Defendants' costs and expenses arising from the interpleader and declaratory judgment actions.

### II.

### A. Interrelated Wrongful Acts.

The Underwriters contend that they are not obligated to fund the Richardson Defendants' defense in the *Maleski* action because there are numerous wrongful acts alleged in that action that were noticed by the Richardson Defendants in 1993, and therefore, fall under the 1993 Policy. Additionally, because the new conduct alleged in the *Maleski* action is interrelated to the 1993 notice, the Underwriters contend that it is not covered by the 1994 Policy.

Under the 1994 Policy, when the Underwriters are provided with notice of a specific wrongful act and the consequences that may result therefrom, then any claim that is based upon that wrongful act shall be deemed to have been made on the date on which the insureds provided the Underwriters with the notice of the wrongful act. Additionally, any claim that is based upon wrongful acts that are interrelated to the wrongful acts of which the Underwriters were provided notice will be deemed to have been made when the notice was actually provided to the Underwriters. Initially, then, we must determine whether all of the allegations of the *Maleski* action are interrelated, as that term is defined by the 1994 Policy, to the wrongful acts that were set forth when notice was given by Corporate Life's counsel as to the acts alleged in the Insurance Commissioner's Opposition Petition.

While there is no Pennsylvania case law directly addressing this issue, there are numerous federal court cases that have dealt with the interrelationship of wrongful acts for purposes for determining insurance coverage. For example, in *National Union Fire Insurance Co. v. Ambassador Group, Inc.*, 691 F.Supp. 618 (E.D.N.Y.1988), the insurer had issued a directors' and officers' liability policy that provided coverage for any losses resulting from any claims made against the officers and directors during the policy period. The liability policy in that case extended for three years but had a $3 million liability limit for each of those years. Four claims had been asserted against the officers and directors, two of which were made in Policy Year I, and two of which were made in Policy Year II. The insurer filed an interpleader action in the District Court, contending that the Policy Year II claims were interrelated to the wrongful acts that were the basis for the Policy Year I claims. In rejecting the insurer's interrelatedness argument, the District Court observed that:

> it is not readily apparent that the claims asserted in the four actions that are the subject of the interpleader all arise out of "the same or interrelated acts." Broadly construed, the claims are interrelated to the extent that they all involve allegations of wrongdoing of one sort or another and

relate, in some way, to the demise of [the company] and its subsidiaries. However, they are legally distinct claims that allege different wrongs to different people.

*Id.* at 623. After observing that the claims were distinct, the District Court concluded that they were not interrelated and directed the insurer to provide coverage to the maximum extent of liability for the two policy years.

A similar result obtained in *Federal Savings and Loan Insurance Corp. v. Burdette*, 718 F.Supp. 649 (E.D.Tenn.1989). In that case, the officers' and directors' policy provided that:

> Claims based on or arising out of the same act, interrelated acts, or one or more series of similar acts, of one or more of the Directors or Officers shall be considered a single Loss and the Insurer's liability shall be limited to [$1 million].

The Federal Savings and Loan Insurance Corporation (FSLIC), as the receiver of the Knox Federal Savings and Loan Association (Knox), filed suit against the former officers and directors of Knox for losses that were sustained as a result of the allegedly negligent issuance of twenty-five loans and loan participations over a two year period. The insurer argued before the District Court that the twenty-five loans and loan participations constitute a single loss because they arose out of the same sequence of events and represented a single continuing failure by the officers and directors to carry out their duties due to a scheme created by one of Knox's officers and directors. The District Court disagreed, stating that:

> [T]he court concludes that the twenty-five loans and loan participations at issue constitute twenty-five separate losses.... [E]ach loan or participation involved separate and different collateral, each loan or participation occurred at a different time, and each loan or participation was for a different purpose.... [T]here were different deficiencies with each loan and participation, and as to each there are alleged to have been separate acts or omissions by certain officers and directors which constitute distinct and dissimilar business deci-

sions by the officers and directors of Knox.... Numerous independent business decisions were made by individual officers and directors after [the] alleged scheme began concerning the approval of certain loans or participations, and ... even in the face of a "common plan," a finding of multiple losses is appropriate in such a situation.

*Id.* at 660. *See also Eureka Federal Savings & Loan Association v. American Casualty Co. of Reading, Pennsylvania,* 873 F.2d 229 (9th Cir.1989).

■ Extending this reasoning to the present case, many of the allegations set forth in the *Maleski* action cannot be said to be interrelated to the allegations of the Insurance Commissioner's previous Opposition Petition or this Court's July 2, 1993 settlement order. First, it is observed that the Opposition Petition was filed by the Insurance Commissioner acting in the capacity as a regulator of insurance companies under Pennsylvania insurance law and regulations. On the other hand, the *Maleski* action was brought by the Insurance Commissioner acting in her capacity as the Statutory Liquidator of Corporate Life. In the latter capacity, the Statutory Liquidator is seeking to enforce the rights of Corporate Life's insureds, creditors and shareholders. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 221.1; *see also Foster v. Rockwood Holding Co.,* 158 Pa.Cmwlth. 258, 632 A.2d 335 (1993). The allegations of the two pleadings pose distinct claims alleging different wrongs to different people.

Additionally, a comparison of the Opposition Petition and the complaint in the *Maleski* action reveals that there are numerous allegations in the latter that were not raised in the former. In the *Maleski* action, there are allegations concerning the Richardson Defendants' wrongful acts in placing unqualified individuals on Corporate Life's board of directors, in using Corporate Life's assets to purchase overvalued and substandard mort-

gages, in using Corporate Life's assets to in effect purchase itself, in delegating Corporate Life's powers to other companies, and in causing other transactions to occur for their own personal benefits. These wrongful acts, which were not alleged in the Opposition Petition or Liquidation Petition, involve separate collateral, occurred at different times and for a different purpose, and involved numerous independent business decisions over several years. As such, they cannot be deemed to be interrelated to themselves, not to mention, to the allegations in the Opposition Petition and the Liquidation Petition.[4]

### B. *Funding of the Entire Defense.*

■ In light of the conclusion that some, but not all of the allegations in the *Maleski* action are not interrelated to the allegations set forth in the Opposition and Liquidation Petitions, the issue then arises as to the extent of the Underwriters' duty to fund the Richardson Defendants' defense. In other words, the question becomes whether the Underwriters are required to fund the Richardson Defendants' entire defense, or must they only reimburse the Richardson Defendants for the costs and expenses incurred in defending those allegations that are not interrelated to the wrongful acts that were noticed in 1993.

Although there is no Pennsylvania case law answering this question in the context of an insurance policy in which the insurer has agreed to reimburse the insured's defense costs, numerous cases have addressed the issue in the context of an insurance policy by which the insurer has agreed to defend the insured against claims. *See Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959); *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Superior Ct. 170, 392 A.2d 738 (1978); *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17 (E.D.Pa.1979); *Britamco Underwriters v. Emerald Abstract Co.,* 855 F.Supp.

---

4. Given the disparity between the allegations set forth in the Opposition Petition and the Liquidation Petition, in comparison to those set forth in the *Maleski* action, we must likewise reject Underwriters' argument that the allegations in the *Maleski* action are excluded from the 1994 Policy because they involve circumstances and

situations which were the subject of notice given under the 1993 Policy. The relationship between the events that were noticed under the 1993 Policy, i.e., the Opposition Petition, and the numerous allegations set forth in the *Maleski* action is too tentative to warrant exclusion of coverage for the *Maleski* action under the 1994 Policy.

793 (E.D.Pa.1994). In those cases, the courts have recognized that the "plasticity of pleadings" make it difficult for the insurer and the insured to determine what claims fall within the coverage of an insurance policy. *Cadwallader, supra.* For this reason, they have held that if a complaint sets forth two causes of action, only one of which would constitute a claim within the insurance policy's coverage, then the insurer has a duty to defend the action until such time that it can confine the claim to a recovery that is clearly excluded from the scope of the policy. *Seaboard Industries, supra.* If some of the allegations of a complaint fall within the policy coverage, then the insurer must defend the entire action even if the other allegations clearly fall outside of the policy. *C. Raymond Davis & Sons, supra; see also Cadwallader, supra.* Likewise, if only one count of a multiple count complaint falls within the policy's coverage, and the allegations of the complaint are such that they cannot easily be distinguished between the counts, then the insurer has a duty to defend the insured. *See Cadwallader, supra.*

In the present case, while there are allegations in the *Maleski* complaint that are identical to or interrelated to the wrongful acts noticed by Corporate Life in 1993, there are also numerous new allegations set forth in that complaint. The counts of that complaint are not, however, based upon any specific allegations therein. Instead, they allege cause of actions against the Richardson Defendants based upon all of the wrongful acts set forth in the complaint. As such, it is impossible at this stage of the proceedings to determine what allegedly wrongful acts serve as the basis for each and every count of the complaint. Until such time as that determination can be made, i.e., one can ascertain those counts which are based entirely upon the previously noticed wrongful acts or wrongful acts interrelated thereto, the Underwriters are obligated to fund the Richardson Defendants' defense for the entire *Maleski* action.

### III.

■ The Underwriters then argue that, if any of the allegations of the *Maleski* action are not interrelated to the wrongful acts alleged in the Opposition Petition or Liquidation Petition, they are nevertheless excluded from the 1994 Policy because they were not asserted until the Statutory Liquidator filed the *Maleski* complaint in 1995. This argument, however, disregards the fact that the praecipe in the *Maleski* action was filed on December 29, 1994. Because the filing of a praecipe is sufficient to commence an action against a party,[5] the *Maleski* action constitutes a claim that was made against the Richardson Defendants in 1994. As such, it falls within the coverage provided by the 1994 Policy.[6]

### IV.

■ If they are entitled to defense costs for the *Maleski* action, the Richardson Defendants argue that they are also entitled to be reimbursed for their costs associated with the Underwriters' interpleader action and declaratory judgment action. The Richardson Defendants argue that, because the Statutory Liquidator has raised factual allegations in her counterclaims to the interpleader and declaratory judgment actions that, if proven, would have a collateral estoppel effect in the *Maleski* action, the Underwriters are required to fund their defense in those actions. The Underwriters, on the other hand, argue that the Statutory Liquidator's counterclaims are against them, and not the Richardson Defendants. As such, they do not constitute

---

**5.** Pa.R.C.P. No. 1007(1).

**6.** Although the Richardson Defendants did not provide the Underwriters with notice of the *Maleski* action until January 26, 1995, that action nevertheless constitutes a claim made during the policy period. The 1994 Policy only requires that notice of claim must be given within sixty days of it first being made. Because the Richardson Defendants did comply with this notice requirement, and because the 1994 Policy does not specifically state that the notice must be provided prior to the expiration thereof, the Richardson Defendants cannot be denied relief on this basis. *See First Pennsylvania Bank, N.A. v. National Union Fire Insurance Co.,* 397 Pa.Superior Ct. 612, 580 A.2d 799 (1990) (holding that courts must strictly construe language of an insurance policy that would deny the insurer coverage).

a claim against the Officers and Directors of Corporate Life as required by the 1994 Policy. Even if the Statutory Liquidator's counterclaims could be construed to be claims against the Officers and Directors of Corporate Life, the Underwriters argue, they were not asserted until 1995, at which point, the 1994 Policy had expired.

To reiterate, the 1994 Policy specifically provides that it "APPLIES ONLY TO ANY CLAIM *MADE AGAINST THE DIRECTORS AND OFFICERS* DURING THE POLICY PERIOD." Furthermore, the 1994 Policy defines a "Claim" as "any judicial or administrative proceeding seeking a binding adjudication of liability of *the Directors and Officers* for damages or other relief." A review of the Statutory Liquidator's counterclaims in the interpleader and declaratory judgment actions indicates that the allegations contained therein address only the propriety of the Underwriters' conduct in the issuance of the 1993 and the 1994 Policies. The Statutory Liquidator's counterclaims seek an adjudication against only the Underwriters' and not the Richardson Defendants. Additionally, because the complaint in the *Maleski* action does not even concern itself with the 1993 and 1994 Policies, we fail to see how the interpleader and declaratory judgment actions could have a collateral estoppel effect in the *Maleski* action. Absent a claim against the Richardson Defendants in the interpleader and declaratory judgment actions, and in light of the fact the issues in those actions are not raised in the *Maleski* action, the Underwriters have no duty to fund the Richardson Defendants' defense costs in the interpleader and declaratory judgment actions.

Accordingly, the Richardson Defendants' motion for a preliminary injunction is granted in part and reversed in part.

### ORDER

AND NOW, this 27th day of February, 1996, upon consideration of the motion for preliminary injunction filed by Defendants Richardson, Nering and Molin, it is ordered that:

1. The Plaintiffs are directed to fund or reimburse the costs of the said defendants'

defense of claims in *Maleski v. Molin,* 2 M.D. 1995, from Policy No. 595/DOO 11400I until further order from this Court.

2. In all other respects, the preliminary injunction is denied.