Stephen Bruce **BOOKER**, As Lead Representative for Those Certain Underwriters at Lloyds, London, Subscribing to a Policy of Insurance Numbered Nac–1017, Plaintiff,

v.

Terry O. **BLACKBURN** and Blackburn Engineering Associates, P.A., Defendants–Third Party Plaintiffs,

v.

**KIRKE–VAN ORSDEL, INC.,** Third Party Defendant.

Civil Action No. 95–5368.

United States District Court, D. New Jersey.

Nov. 1, 1996.

Marc B. Kramer, Kramer, Kramer & Kilgallen, Hazlet, New Jersey, Steven D. Pearson, and James H. Kallianis, Jr., Bates, Meckler, Bulger & Tilson, Chicago, Illinois, for Plaintiff.

James A. Woller, Pfaltz & Woller, P.A., Summit, New Jersey, for Defendants.

## OPINION

ORLOFSKY, District Judge:

Plaintiff and Defendants have filed cross-motions for summary judgment on Plaintiff's claims for reformation and rescission of a group professional liability policy issued by Plaintiff to Defendants for coverage during the period from December 2, 1993, to December 1, 1994 ("the 1994 Policy"). This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship and alleged damages in excess of fifty thousand dollars, exclusive of interest and costs.

The primary issues raised in Plaintiff's motion for summary judgment are: (1) whether a Praecipe to Issue Writ of Summons is a "claim" or a "circumstance which may result in a 'claim' within the meaning of the 1994 Policy;" and (2) if so, whether the Defendants' failure to include any reference to the Praecipe in the application for the 1994 Policy amounts to a material misrepresentation entitling the Plaintiff to rescind the Policy. For the reasons that follow, I conclude that the answer to both questions raised by Plaintiff's motion is yes. Accordingly, Plaintiff's motion for summary judgment on his claim for rescission of the 1994 Policy will be granted. Defendants' motion for summary

judgment on Plaintiff's claim for rescission will be denied, and Defendant's motion for summary judgment on Plaintiff's claim for reformation will be dismissed as moot.

## I. Facts and Procedural Background

Plaintiff, Stephen Bruce Booker, is the Lead Representative for Certain Underwriters at Lloyd's of London subscribing to a master policy of insurance issued in connection with an insurance plan sponsored by the American Society of Civil Engineers ("ASCE"). (Amended Complaint ¶ 1). Members of ASCE can apply for professional liability insurance under the ASCE-sponsored plan through the plan's broker/administrator, Kirke–Van Orsdel, Inc. ("KVI").

Defendant, Terry Blackburn, is the sole principal, engineer, owner, director and officer of Defendant, Blackburn Engineering Associates, P.A. ("Blackburn Engineering"). (Certification of Terry Blackburn in Opposition to Plaintiff's motion for summary judgment ("Blackburn Cert.") ¶ 1).

In 1985, the University of Pennsylvania entered into a contract with an architectural firm known as the Hillier Group to design the Steinberg Conference Center ("SCC"), a large multi-story building on the campus of the University. On February 5, 1985, the Hillier Group then contracted with Blackburn Engineering to provide the structural engineering services for the SCC. (Blackburn Cert., Ex. A, p. 14).

Shortly after the completion of the construction of the SCC, the University expressed concerns regarding leaking in the brickwork and water infiltration through the masonry causing damages to the interior. (*Id.* at 18, 21). Blackburn was aware of the University's concerns and attended meetings during which the University discussed its concerns with the various participants in the construction of the SCC. (*Id.* at 21–22).

On September 1, 1993, Defendant, Blackburn, received a certified letter, dated August 24, 1993, from counsel for the University of Pennsylvania stating, "[e]nclosed please find your service copy of the University of Pennsylvania's Praecipe to Issue Writ of Summons and Summons with regard to the

above-captioned matter. If you need any additional information, please feel free to contact me." (Kallianis Cert., Ex. 1). Enclosed with the letter was a Praecipe [1] bearing the caption "The Trustees of the University of Pennsylvania ..., Plaintiff, vs. The Hillier Group, ... Blackburn Engineering ... Defendants," filed with the Court of Common Pleas, Philadelphia County, Trial Division, file-stamped as received on August 23, 1993, and designated "August Term 1993, No. 3187." *Id.*

In December, 1993, Defendant, Blackburn, submitted a "Civil Engineers Professional Liability Insurance Application" ("the Application") to KVI. (Kallianis Cert. Ex. 3). In response to the application, on December 14, 1993, KVI issued an Evidence of Insurance form ("EOI") notifying Blackburn that coverage had been effected under the plan for him and Blackburn Engineering, for the period from December 1, 1993, to December, 1994. (Kallianis Cert., Ex. 5).[2] Included with the EOI was a specimen policy form that set forth the terms, conditions and exclusions of the ASCE master policy. (Kallianis Cert., Ex. 5).[3]

On June 30, 1994, the University of Pennsylvania filed the complaint against Blackburn Engineering and the various other defendants named in the action commenced by the Praecipe in August, 1993. (Blackburn Cert. ¶ 21). The allegations in the complaint against Blackburn Engineering relate to Blackburn Engineering's provision of structural engineering services for the University in connection with the construction of the SCC facility on its campus during the time period from 1986 to 1989. As was the Praecipe, the complaint, captioned *The Trustees of the University of Pennsylvania v. The Hillier Group; Lehrer/McGovern/Bovis; Blackburn Engineering; Davis–Giovinazzo Construction Co.; US Roofing Corp., et al.,* No. 3187, was filed in the Court of Common Pleas of Philadelphia County. (Kallianis Cert., Ex. 5).[4] Shortly thereafter, on August 8, 1994, Blackburn sent a copy of the complaint to KVI for the provision of a defense pursuant to the 1994 Policy.

On October 5, 1995, Plaintiff filed in this Court the original complaint in this action, alleging that he is entitled to a reformation of the 1994 Policy due to a material variance between the bargain reached between the parties and the terms of the policy. Specifically, Plaintiff contended that Blackburn Engineering was included as an insured on the policy of Terry Blackburn as a result of a mutual mistake and the 1994 Policy should be reformed to omit Blackburn Engineering as a named insured. (Original Complaint ¶¶ 18–22).

Plaintiff was granted leave to file and did file an amended complaint on August 14, 1996, incorporating the earlier reformation claim and adding a claim for rescission of the insurance policy. In the amended complaint, Plaintiff alleges that rescission is appropriate

---

1. Pursuant to the Pennsylvania Rules of Civil Procedure, the filing and service of a Praecipe is an alternative means of initiating an action against a party. Pa.R.C.P. 1007(1).

2. Although the EOI indicated that both Blackburn and Blackburn Engineering were the named insureds on the 1994 Policy, the Application was submitted in Blackburn's name only. This inconsistency is the subject of Plaintiff's claim for reformation on which the Defendants move for summary judgment. Because this Court will grant Plaintiff summary judgment on its claim for rescission of the 1994 Policy, Defendant's motion for summary judgment on Plaintiff's reformation claim will be dismissed as moot.

3. The "Conditions" section of the specimen policy, like the ASCE master policy, expressly provided:

By acceptance of this insurance, the Insured reaffirms as of the inception date of this insurance that (1) the statements in the Application attached to the Policy and made a part thereof are the Insured's agreements and representations, (2) this insurance is issued in reliance upon the truth and accuracy of such representations and (3) the Policy embodies all agreements existing between the Insured and Underwriters relating to this insurance.

(Kallianis Cert., Ex. 5, p. 16).

4. According to the University of Pennsylvania's complaint, each of the defendants in that case was involved with either the design or construction of the University's Steinberg Conference Center, which opened in the summer of 1989. The University contends that shortly after the SCC opened, it discovered water leaks and other drainage problems in the building, as well as problems with the building's structure. (Kallianis Cert., Ex. 5).

based on "intentional material misrepresentations made in the Application on which Certain Underwriters relied in issuing the EOI in connection with the Master Policy." (Amended Complaint ¶ 39).

Defendants now move for summary judgment on Plaintiff's claims for reformation and rescission,[5] while Plaintiff cross-moves for summary judgment on its rescission claim.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996); *Hersh v. Allen Products, Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995); *Helen L. v. DiDario,* 46 F.3d 325, 329 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a party must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which its opponent has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Nonetheless, the moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.*

## III. Discussion

### A. *Plaintiff's Motion for Summary Judgment*

■ Plaintiff moves for summary judgment on his claim for rescission of the 1994 Policy contained in his amended complaint. Under New Jersey law,[6] an insurer may rescind a policy when the insured makes a false statement in the insurance application

---

**5.** Although the Defendants initially moved for summary judgment on Plaintiff's original complaint containing only a claim for reformation, Defendants have indicated in their brief that they are also moving for summary judgment on Plaintiff's amended complaint which contains claims for both reformation and rescission. (Defendant's Memorandum in Opposition to Plaintiff's motion for summary judgment at 3–4).

**6.** In diversity actions such as this, state law governs the interpretation of an insurance contract. *Ruhlin v. New York Life Ins. Co.,* 304 U.S. 202, 205, 58 S.Ct. 860, 861, 82 L.Ed. 1290 (1938). The parties have agreed that New Jersey law governs this suit.

that materially affects the acceptance of the insurance risk. *Scalia v. Lafayette Life Ins. Co.,* No. 92–3714, 1995 WL 631841 (D.N.J. Oct. 23, 1995) (applying New Jersey law); *Ledley v. William Penn Life Ins. Co.,* 138 N.J. 627, 637–38, 651 A.2d 92 (1995); *Massachusetts Mut. Ins. Co. v. Manzo,* 122 N.J. 104, 111, 584 A.2d 190 (1991).

Thus; in order for Plaintiff to succeed on his motion for summary judgment on his claim for rescission, Plaintiff must establish that the Defendants' application for insurance contained misrepresentations which were both knowing and material.

(i) Defendants' Misrepresentations

■ Plaintiff claims that the Defendants knowingly misrepresented information on the application for insurance by failing to include in the application any reference to the Praecipe filed by the University of Pennsylvania naming Blackburn Engineering as a defendant. The undisputed facts contained in the summary judgment record reveal that on September 1, 1993, Defendant, Blackburn, received a certified letter, dated August 24, 1993, from counsel for the University of Pennsylvania stating, "[e]nclosed please find your service copy of the University of Pennsylvania's Praecipe to Issue Writ of Summons and Summons with regard to the above-captioned matter. If you need any additional information, please feel free to contact me." (Kallianis Cert., Ex. 1). Enclosed with the letter was the Praecipe filed with the Court of Common Pleas, Philadelphia County, Trial Division, file-stamped as received on August 23, 1993, and designated "August Term 1993, No. 3187." *Id.*

Blackburn applied for the 1994 Policy through the ASCE program on December 8, 1993, just over three months after his receipt of the Praecipe. (Kallianis Cert., Ex. 3). When asked the following two questions on the application for the 1994 policy, Blackburn made no reference whatsoever to the Praecipe filed by the University of Pennsylvania:

15K. Are you aware of any circumstances which may result in a claim being made against you?

16. Have any claims been made or legal actions been brought against you in the past five years?

(Kallianis Cert., Ex. 3).

Blackburn concedes that his failure to disclose the Praecipe in response to either of these two questions was deliberate and not an oversight. (Blackburn Cert. ¶ 19). Instead, Blackburn contends that after consulting with an attorney as well as the architect involved in the University of Pennsylvania construction project at issue, he concluded that did not need to list the Praecipe on the Application because "there was nothing to suggest that the University of Pennsylvania brickwork problem would amount to anything with respect to me or my firm." *Id.* Blackburn alleges that he was generally familiar with a problem with water infiltration in the brickwork of the building in question and that he knew he had nothing to do with the brickwork.

Blackburn also claims that he omitted any reference to the Praecipe on the Application because he "believe[d] that Blackburn Engineering will be exonerated in the University of Pennsylvania case," because the University "named the wrong engineers." (*Id.* ¶¶ 9, 10, 22).

Blackburn's belief, however, that the Praecipe would not "amount to anything," simply does not erase the existence of the Praecipe. It is clear that the filing of a praecipe is sufficient to commence an action in Pennsylvania, *see* Pa.R.Civ.P. 1007(1), and may constitute a "claim" within the meaning of an insurance policy. In *Anglo–American Ins. Co. v. Molin,* —— Pa.Cmwlth. ——, 673 A.2d 986, 994 (1996), the court held that the filing of a praecipe naming the insured as a defendant constituted a "claim" against the insured within the meaning of the insurance policy.[7] The policy in *Molin,* like the one at issue in this case, was a "claims made" policy, which means that "the insurer is obligated to reimburse the insured for losses arising out

7. Although New Jersey law governs the interpretation of the contract of insurance, a Praecipe is a creature of Pennsylvania law which must be analyzed under Pennsylvania law, since no analogous pleading exists in New Jersey.

of any claims made during the policy period, irrespective of when the conduct underlying the claim actually occurred." *Id.* 673 A.2d at 988 n. 2 (citing *Federal Savings & Loan Insurance Corporation v. Burdette*, 718 F.Supp. 649 (E.D.Tenn.1989)). The court in *Molin* held that because the praecipe was filed in an action against the insured in 1994, the "claim" against the insured was to be considered made in 1994, whether or not the complaint was filed that year. *Id.*

Blackburn's belief that any claims brought by the University against Blackburn Engineering would fail, does not exonerate the Defendants from the obligation to list the Praecipe in response to the questions on the application asking whether he was "aware of any circumstances which may result in a claim being made against [him]" or whether "any claims [had] been made or legal actions been brought against [him] in the past five years." (Kallianis Cert., Ex. 3). By his own admission, Blackburn acknowledges that he knew that the Praecipe was, at a minimum, a circumstance "which may result in a claim being made" against Blackburn Engineering in the future. In fact, at his deposition, when asked whether it was his understanding that the Praecipe was something that could potentially lead to a lawsuit, Blackburn replied, "yes." (Kallianis Cert., Ex. 2 at 106)..

Defendants further contend that even if Blackburn knew the Praecipe amounted to some type of "claim" against Blackburn Engineering, he did not realize that the "claim" was one for negligence for which the policy provided insurance coverage.[8] (Blackburn Cert. ¶ 21). Notwithstanding Blackburn's assertions to the contrary, in light of his prior knowledge that the University had expressed concerns relating to leaking in the brickwork and water infiltration at the SCC facility, it is clear that Blackburn knew or certainly should have known, that any "claim" brought by the University of Pennsylvania against all of the various participants in the construction project could very well be one for negligence. Indeed, the claim could not be one for breach of contract

because Blackburn, himself, admits that Blackburn Engineering "was not under direct contract with the University." (Blackburn Cert. ¶ 5). Therefore, based upon the undisputed evidence contained in the summary judgment record, I find that Blackburn knew or should have known that the Praecipe was either a "claim" brought against Blackburn Engineering within the meaning of the 1994 Policy, or at the very least, a circumstance, of which he concedes he was aware, "which may result in a claim being made against [Blackburn Engineering]." (Kallianis Cert., Ex. 3).

In fact, even without any manifestation of a third party's intent to pursue a claim against an insured, such as a praecipe or a complaint, an insured may be charged with notice of circumstances which may result in a claim being made against it. In *Esoldi v. Esoldi*, 930 F.Supp. 1015 (D.N.J.1996), for example, the court held that the insured materially misrepresented information on his application for insurance when he responded in the negative to the following question:

> Is the firm aware of any circumstances, or any allegations or contentions as to any incident which may result in any claim being made against the firm or any or its past or present Owners, Partners, Shareholders, Corporate Officers or Employees or its predecessors in business?

*Id.* at 1022. The court found that the insured's mere knowledge of the questionably illegal or unethical business conduct of several of the insured's partners was sufficient to place the insured on notice of potential claims against them, and to obligate the insured to answer the question in the affirmative, notwithstanding the lack of any manifested intent of any third parties to file a claim against the insured. *Id.* at 1019–1021.

Moreover, Plaintiff's ability to rescind the 1994 Policy is not defeated by Blackburn's contention that he did not intend to deceive Plaintiff by failing to list the Praecipe in his responses to the questions on the insurance application. Although a misrepresentation must be knowing in order to justify rescis-

---

**8.** The 1994 Policy defines "claim" as "a written demand received by the Insured for money or services, including the service of suit or institu-
tion of arbitration proceedings against the Insured, alleging negligent acts, errors or omissions." (Kallianis Cert., Ex. 5 p. 3).

sion, "[t]o rescind a policy, an insurer need not show that the insured actually intended to deceive." *Ledley*, 138 N.J. at 635, 651 A.2d 92. In other words, an insurer need only show that the insured's omission of material information from the policy was knowing and not simply an oversight.

Based upon the foregoing analysis, I conclude that the undisputed evidence contained in the summary judgment record reflects that, by failing to include any reference to the Praecipe in their responses to Questions 15K and 16 of the Application for the 1994 Policy, the Defendants knowingly misrepresented information on the Application.

### (ii) Materiality of Defendants' Misrepresentations

■ In order to succeed on his claim for rescission, Plaintiff must also establish that the Defendants' misrepresentations were material. A misrepresentation is material if it "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *Ledley*, 138 N.J. at 638, 651 A.2d 92 (citing *Manzo*, 122 N.J. at 115, 584 A.2d 190 (misrepresentation held material where insurer claimed that it would have charged more than two times what it charged applicant for insurance had it known the truth about applicant's medical history)); *Formosa v. Equitable Life Assurance Society*, 166 N.J.Super. 8, 398 A.2d 1301 (App.Div.), *certif. denied*, 81 N.J. 53, 404 A.2d 1153 (1979) (misrepresentation of application materially affected the issuance of insurance policy where insurer's medical director claimed that the insurer would not have issued the policy had it known of applicant's true medical history). Essentially, under New Jersey law, a misrepresentation is material if it is "reasonably related to the estimation of the risk or the assessment of the premium." *Manzo*, 122 N.J. at 117, 584 A.2d 190.

In *Manzo*, the New Jersey Supreme Court held that the insurer was entitled to rescission of the policy where the insured falsely represented his medical history on the policy's application. The court found that such misrepresentations were material because

the insurer claimed "it would have requested more information and issued a policy at a premium two and one-half times the standard rate that [the insured] was charged." *Id.* at 117, 584 A.2d 190. The court further stated that a misrepresentation need not render an insured "uninsurable" in order for that misrepresentation to be sufficiently material to justify rescission. *Id.* at 115, 584 A.2d 190. The court noted that:

> So stringent a test would be an incentive for dishonesty; it puts the dishonest applicant in a better position than the honest one. Under such a test, an insurer would be bound unless the [misrepresentation] would have precluded the issuance of the policy. Thus, the dishonest applicant would stand to gain if the lie goes undetected and would risk nothing by lying.

*Id.* at 115, 584 A.2d 190. Instead, the court added that "denying coverage to insureds who lie ... encourages applicants to tell the truth." *Id.* at 116, 584 A.2d 190.

In support of his contention that the Defendants' misrepresentations were material in this case, Plaintiff points to both the express language of the 1994 Policy, as well as the Certification of Cinthia Wiedman, the Director of Professional Liability Underwriting at KVI–Specialty Division. The 1994 Policy expressly provides that:

> By acceptance of this insurance, the Insured reaffirms as of the inception date of this insurance that (1) the statements in the Application attached to the Policy and made a part thereof are the Insured's agreements and representations, (2) **this insurance is issued in reliance upon the truth and accuracy of such representations** and (3) the Policy embodies all agreements existing between the Insured and Underwriters relating to this insurance.

(Kallianis Cert., Ex. 5, p. 16) (emphasis supplied).

Moreover, in her certification, Ms. Wiedman states that one of her responsibilities as Director of Professional Liability Underwriting "is to oversee the underwriting function performed by KVI on behalf of Certain Underwriters at Lloyd's ('Underwriters') in connection with the insurance plan sponsored by

the ASCE." (Wiedman Cert. ¶3). Ms. Wiedman further states that:

Given the claims-made nature of the ASCE plan, it is imperative that an applicant disclose (a) all circumstances of which the applicant is aware that could potentially result in a claim and (b) all claims made against the applicant within the last five years, in order for Kirke–Van Orsdel to properly perform its underwriting function. **A disclosure by the applicant under either category directly affects Kirke–Van Orsdel's estimation of the risk presented by the potential insured and its ultimate decision of whether or not it should issue coverage on behalf of Underwriters.**

*Id.* ¶3 (emphasis supplied).

Based upon the foregoing, it is clear that Blackburn's failure to include any information relating to the Praecipe or any of the underlying circumstances relating to the filing of the Praecipe on his application for the 1994 policy "reasonably related to the estimation of the risk or the assessment of the premium" by the insurer, and was therefore material under New Jersey law. *See Manzo,* 122 N.J. at 117, 584 A.2d 190. Accordingly, I conclude that the undisputed evidence contained in the summary judgment record demonstrates that the Plaintiff is entitled to rescind the 1994 Policy and, therefore grant summary judgment in favor of Plaintiff on his rescission claim. Defendants' motion for summary judgment on Plaintiff's rescission claim will be denied and Defendants' motion for summary judgment on Plaintiff's reformation claim will be dismissed as moot.

This court will enter an appropriate order.

### ORDER

This matter having come before the Court on the cross-motions of Plaintiffs and Defendants for summary judgment pursuant to Fed.R.Civ.P. 56, Marc B. Kramer, Esq., of Kramer, Kramer & Kilgallen, and Steven D. Pearson, Esq., and James H. Kallianis, Jr., Esq., of Bates, Meckler, Bulger & Tilson, appearing on behalf of Plaintiff, and James A. Woller, Esq., of Pfaltz & Woller, P.A., appearing on behalf of Defendants; and,

The Court having considered the written submissions of the parties, including the briefs and certifications filed in support of, and in opposition to the parties' cross-motions;

For the reasons set forth in the Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 1st day of November, 1996, that Plaintiff' motion for summary judgment on his claim for rescission is GRANTED; and,

IT IS FURTHER ORDERED that Defendants' motion for summary judgment on Plaintiff's rescission claim is DENIED, and Defendants' motion for summary judgment on Plaintiff's reformation claim is DISMISSED as moot.